RANCHO PALOS VERDES CORPORA-
TION, a corporation,
Plaintiff-Appellant,

v.

CITY OF LAGUNA BEACH, a Municipal Corporation, et al.,
Defendants-Appellees.

Nos. 75–1813, 75–2193, 75–2791.

United States Court of Appeals,
Ninth Circuit.

Dec. 28, 1976.

John P. Pollock (argued), of Pollock, Williams & Berwanger, Los Angeles, Cal., for plaintiff-appellant.

George G. Logan (argued), Newport Beach, Cal., Larry C. King, Deputy Atty. Gen. (argued), Sacramento, Cal., for defendants-appellees.

Before MERRILL and HUFSTEDLER, Circuit Judges, and RENFREW,* District Judge.

MERRILL, Circuit Judge:

These cross appeals are taken from an order of the district court abstaining from the exercise of federal jurisdiction, while at the same time retaining jurisdiction for the federal claims asserted by the plaintiff, pending resolution of the state issues in the

* Honorable Charles B. Renfrew, United States District Judge for the Northern District of California, sitting by designation.

state courts. We affirm the order of the district court.[1]

The order was entered after complaint of the plaintiff had been filed but before defendants had answered. The facts before the district court are, therefore, those alleged in the complaint, and for the purposes of this appeal they are accepted as true.

Federal claims were based on 42 U.S.C. §§ 1983, 1985 and the fifth and fourteenth amendments to the Constitution. The complaint alleged that since 1963 plaintiff has been the owner of 522 acres of land known as Sycamore Hills. This property has been unoccupied and unused for any purposes other than grazing. At the time of its acquisition by plaintiff, Sycamore Hills was located in the unincorporated area of Orange County, California.

In 1966, Sycamore Hills was annexed into the City of Laguna Beach. Under preannexation agreements, the city rezoned Sycamore Hills to permit development to a density of approximately 3,000 residential units, together with a small commercial area. The city also approved a tentative tract map for a portion of Sycamore Hills and assisted plaintiff in its preliminary engineering efforts with respect to the construction of sewage lines to serve the property.

The complaint alleges that about May, 1968, and continuing to the present, the attitude of the city with regard to the development of Sycamore Hills changed drastically; that the city, in concert with other defendants, then adopted a plan to prevent any development of Sycamore Hills.

It is alleged that as a part of that plan the city sought funds for the purchase of Sycamore Hills for park purposes, knowing that such funds were not available; enacted moratoria on all building on Sycamore Hills; adopted an interim open space element to the city's general plan which provided for a prohibition of all development of Sycamore Hills and for the ultimate acquisition of Sycamore Hills by the city as a park and adopted elements to the city's general plan which provided that Sycamore Hills should be preserved in its natural state and ultimately acquired as a park.

Count I of the complaint charges that some of the defendants,[2] under color of law, adopted a plan to prevent the use and development of Sycamore Hills, thereby depriving plaintiff of the equal protection of the laws and of due process of the law in violation of 42 U.S.C. § 1983. Count II charges defendants[3] with a conspiracy to commit the wrong alleged in count I in violation of 42 U.S.C. §§ 1983, 1985. Count III alleges a breach of contract.[4] Counts IV, V and VI charge that the city's actions constituted a taking, operated to condemn and diminished the market value of Sycamore Hills requiring compensation under the fifth and fourteenth amendments to the United States Constitution and article I, § 19 of the California Constitution.

Following filing of the complaint the defendants moved the district court to abstain from exercise of jurisdiction. In support of that motion, the State of California appeared as *amicus curiae.*

The motion of defendants was granted by the district court and an order was entered dismissing the action with leave to plaintiff to move that the court retain jurisdiction

1. This court, on its own motion, called for briefing on the question of the appealability of the order from which this appeal was taken. We are satisfied from the response of counsel that the order was appealable. *See Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 715 n. 2, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); cf. *Moses v. Kinnear,* 490 F.2d 21, 24 (9th Cir. 1973).

2. The defendants named in count I are the city, the city council, the city planning commission, individuals who are or have been councilmen or planning commissioners since May, 1968, the city attorney and the city planning director.

3. The defendants named in count II include individuals named in count I, other individuals not officials and employees of the city, and an organization known as Greenbelt, Inc.

4. The defendants named in count III are the city, its city council and its city councilmen.

over the federal claims pending resolution of the state claims in the state courts. The plaintiff did so move, the motion was granted and the order of abstention was modified to provide for the retention of jurisdiction.

Plaintiff has appealed from the decision of the district court to abstain. Defendants have cross appealed from the decision of the district court to retain jurisdiction over the federal claims.

### Appeal of Rancho Palos Verdes

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). One category of cases appropriate for abstention is "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959); *Railroad Comm'n of Texas v.*

*Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

In *Canton v. Spokane School Dist., No. 81*, 498 F.2d 840, 845 (9th Cir. 1974), this court interpreted *Pullman* as requiring compliance with three tests:

"(1) The complaint 'touches a sensitive area of social policy upon which federal courts ought not to enter unless no alternative to its adjudication is open.'

(2) 'Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.'

(3) The possibly determinative issue of state law is doubtful."

Appellant contends that these tests have not been met. The district court ruled otherwise. We shall discuss them in order.

The complaint involves land use planning. An array of state constitutional provisions and statutes demonstrate that this is today a sensitive area of social policy meeting the first *Canton* requirement—one upon which federal courts ought not to enter unless no alternative to its adjudication is open.[5]

---

**5.** Under California law, counties and cities are required to adopt general plans. The nature of the legislation is summarized in *Selby Realty Co. v. City of San Buenaventura*, 10 Cal.3d 110, 116, 109 Cal.Rptr. 799, 514 P.2d 111 (1973):

"Under the Government Code the legislative body of each city and county must establish a planning agency (§ 65100) which shall adopt a comprehensive, long term general plan for the physical development of the city or county (§ 65300). As noted above, the plan must include a circulation element showing the general location of existing and proposed streets (§ 65302, subd. (b)). The plan may be changed after notice and hearing if the legislative body deems a change to be in the public interest (§ 65356.1). Cooperation between city and county planning agencies is encouraged (§§ 65305, 65306, 65650, 65651), and a city and county may adopt the same general plan (§ 65360).

* * * Recent legislation requires county and city zoning ordinances to be consistent with the general plan by January 1, 1974, (§ 65860, subd. (a); Stats. 1973, ch. 120.)"

State policy also has focused on retention of open spaces.

"The elimination of open spaces in California is a melancholy aspect of the unprecedented population increase which has characterized our state in the last few decades. Manifestly governmental entities have the re-

sponsibility to provide park and recreation land to accommodate this human expansion despite the inexorable decrease of open space available to fulfill such need. These factors have been recognized by the recent adoption of art. XXVIII of the Constitution, which provides that it is in the best interests of the state to maintain and preserve open space lands to assure the enjoyment of natural resources and scenic beauty for the economic and social well-being of the state and its citizens. Statutes which further the underlying policy expressed in the constitutional section must be upheld whenever possible in order to effectuate its salutary purposes." *Associated Home Builders of Greater East Bay, Inc. v. City of Walnut Creek*, 4 Cal.3d 633, 638–39, 94 Cal.Rptr. 630, 484 P.2d 606 (1971).

To further the goal of open space preservation the California Legislature has required each local planning agency to include an open space element in its general plan. Cal.Gov. Code § 65302(e) (West Supp.1976). The Legislature declared its intent in enacting these sections to be:

"(a) To assure that cities and counties recognize that open-space land is a limited and valuable resource which must be conserved wherever possible.

(b) To assure that every city and county will prepare and carry out open-space plans which, along with state and regional open-

This is not only because the state has enacted a web of statutes, but also because much of the legislation is recent. California is attempting to grapple with difficult land use problems through new policies and new mechanisms of regulation. The state is also struggling with the problem facing cities and counties in those cases where their zoning efforts to preserve open space in response to the state's announced policy (see note 4, *supra*), may unwittingly have resulted in a seizure of property rights that they did not intend and cannot afford.[6] Federal courts must be wary of intervention that will stifle innovative state efforts to find solutions to complex social problems.

As to the second *Canton* test, this is a case where "constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy." While count I purports to tender only federal questions by alleging deprivation of equal protection and due process, both federal questions depend on underlying questions of state law, and the resolution of one of those state questions could obviate the need for federal constitutional adjudication. Plaintiff's equal protection claim presupposes a selective violation of rights bestowed by state law. A court must decide that the plaintiff has the state law rights it asserts before a court can determine whether there has been a deprivation of the equal protection of those state laws. Resolution of the state law question

is thus a necessary preliminary to reaching the federal constitutional question. If the state question is decided in plaintiff's favor, then the state court might grant appropriate relief. The federal constitutional question, then, will not need to be reached. A state adjudication of a purely state question could result in a termination of the controversy.

As to the third *Canton* test, the possibly determinative questions of state law involved here are also doubtful. Plaintiff's complaint alleges that the defendants' actions constituted a denial of equal protection by preventing the development of Sycamore Hills and requiring its preservation in its natural state so that it could ultimately be acquired by the city as a park. California courts have yet to decide the precise extent to which the state`and its municipalities may limit the development of private property.[7] Moreover, recently enacted statutes might be authoritatively interpreted by the California courts to serve as a basis for finding that the defendants acted beyond their statutory authority, for which the appropriate remedy might be the injunctive relief sought by the plaintiff. *See* Cal.Gov.Code § 65912 (West Supp.1976).

We find that the three tests for abstention as required by this court in *Canton* have been met. The district court acted within its discretion in abstaining at this time.

space plans, will accomplish the objectives of a comprehensive open-space program."
Cal.Gov.Code § 65562 (West Supp.1976).
  Cal.Gov.Code § 6953 (West 1966), enacted in 1959, provides:
    "The Legislature further declares that the acquisition of interest or rights in real property for the preservation of open spaces and areas constitutes a public purpose * * *."
Cal.Gov.Code § 51072 (West Supp.1976), enacted in 1974, provides:
    "The Legislature hereby declares that open-space lands, if preserved and maintained, would constitute important physical, social, economic or aesthetic assets to existing or pending urban development."

**6.** *Cf. Pinheiro v. County of Marin,* 60 Cal. App.3d 323, 131 Cal.Rptr. 633, 635 (1976), where the plaintiff sought compensation in in-

verse condemnation, charging that the county had rezoned land for the purpose of acquiring open space at no public cost and in so doing had taken the land. The court expressly reserved the question whether plaintiff's proper course was to attack the zoning ordinance as an invalid exercise of the police power.

**7.** *See e. g., HFH, Ltd. v. Superior Court,* 15 Cal.3d 508, 518, n. 16, 125 Cal.Rptr. 365, 542 P.2d 237 (1975), where the California Supreme Court stated:
    "This case does not present, and we therefore do not decide, the question of entitlement to compensation in the event a zoning regulation forbade substantially *all* use of the land in question. We leave the question for another day."

*Cross Appeal of the City of Laguna Beach*

Laguna Beach appeals from that portion of the district court order that retains jurisdiction pending state resolution of the state law question. It contends that the district court should have dismissed suit without retention of jurisdiction, remanding the plaintiff to the state courts for resolution of all questions, including federal questions, with ultimate review of the federal questions in the Supreme Court.

The city relies on *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). That case involved the regulatory system devised by Texas for conservation of oil and gas, and problems involving common tapping of oil pools and reservoirs by adjoining surface owners. Texas had established an elaborate unified administrative system for handling disputes, with direct judicial review of administrative orders concentrated in the state courts of a single county "to prevent the confusion of multiple review of the same general issues." 319 U.S. at 326, 63 S.Ct. at 1103. The Court held that dismissal of the suit without retention of jurisdiction was proper.

In our judgment, this case is inappropriate for abstention under *Burford.* Unlike *Burford* or *Alabama Public Service Comm'n v. Southern R. Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951), California has not sought to concentrate challenges to the actions of any of the agencies involved here in a particular court or set of courts. Here the federal questions, if any, that survive state adjudication can readily be identified and reserved without colliding with what are essentially state claims. On the other hand, this case is, as we have discussed, appropriate for a *Pullman* abstention and, thus, under *England v. Medical Examiners,* 375 U.S. 411, 421, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), "The litigant is in no event to be denied his right to return to the District Court * * *" where he has made clear his intent to do so "for disposition of his federal contentions."

On the appeal of the Rancho Palos Verdes Corporation and the cross appeal of Laguna Beach, judgment affirmed.