Robert K. RICHARDSON,
Plaintiff-Appellant,

v.

James E.T. KOSHIBA, Joan S. Brown, Herbert C. Cornuelle, William L. Fleming, Henry T. Miyamoto, Lawrence S. Okinaga, et al., Defendants-Appellees.

No. 81–4041.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 21, 1982.

Decided Dec. 1, 1982.

·Walter R. Schoettle, Honolulu, Hawaii, for plaintiff-appellant.

Paul Alston, Paul, Johnson & Alston, Honolulu, Hawaii, for defendants-appellees.

Before SCHROEDER, NELSON, and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Robert K. Richardson, a former Hawaii state district court judge, appeals an adverse judgment in his suit against the members of Hawaii's Judicial Selection Commission (Commission).[1] Richardson challenges their denial of his petition for reappointment, alleging that the Commission's treatment of his petition violated his Fourteenth Amendment rights to procedural due process. He seeks monetary and equitable relief under 42 U.S.C. §§ 1983, 1988.[2] He also alleges violations of Hawaii's constitution and laws.

Because the need to decide the federal due process issues could be obviated by resolution of the state law issues presented in this case, and because we think it more appropriate to have Hawaii's courts decide these sensitive questions of state law controlling judicial appointments, we abstain.

### Facts

Richardson was appointed to a six-year term as state district court judge in 1974. During his term, the people of Hawaii altered their method of judicial selection by amending their constitution to establish a Judicial Selection Commission. *Haw. Const.* art. VI, § 4 (1978).

The amended constitution authorizes the Commission to nominate individuals to fill judicial vacancies and to determine whether to retain sitting judges when their terms expire. *Id.* § 3. The constitution, however, provides no procedural or substantive guidelines for judicial selection and retention. Instead, it empowers the Commission to promulgate rules which shall have "the force and effect of law." *Id.* § 4. The Commission's rules authorize it to screen applications, to "conduct investigations into the background and qualifications of applicants," and to interview applicants.[3] With specific regard to petitions for reappointment, the rules obligate the Commission to (1) publicize the application for reappointment "in such a manner as it deems appropriate to the end that all persons who might have an interest in the ... [decision regarding reappointment] be given an opportunity to present their views," (2) investigate the petitioner's qualifications, and (3) interview the petitioner. The Commission "may," but need not, hold hearings regarding the merits of reappointment.[4]

Prior to the expiration of his term, Richardson filed a timely petition for reappointment. The Commission issued a press release acknowledging Richardson's petition; however, it apparently did not purchase a classified advertisement in the legal notice section of local newspapers. The record does not indicate whether the contents of the press release were ever published by the news media. The Commission also conducted an extensive review of Richardson's qualifications, during which it interviewed numerous individuals, including Richardson. The Commission, however, did not inform Richardson of any of the complaints that may have been lodged against him, nor did it afford him an opportunity to confront and cross-examine adverse witnesses.[5]

---

1. Although this action is against the Commission's members individually, we will sometimes refer to the defendants as "the Commission."

2. 42 U.S.C. § 1983 provides:
    Every person who, under color of ... [state law], subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....
    42 U.S.C. § 1988 authorizes an award of attorney's fees to the prevailing party in a § 1983 action.

3. Rules 9–10, Rules of Procedure for Hawaii's Judicial Selection Commission (hereinafter "Commission Rules").

4. Commission Rule 12(D). Commission Rule 11 provides a list of criteria by which the Commission evaluates applicants. The rules do not state whether these criteria apply when evaluating petitions for reappointment.

5. The record does not indicate the content of any of the interviews, nor whether any complaints had been raised regarding Richardson's judicial qualifications or performance.

The Commission decided not to reappoint Richardson. He then filed this action to challenge that decision and the procedure by which it was made. He seeks monetary and injunctive relief.

## Procedural Posture

Richardson's complaint contained six claims. The district court dismissed four of these, and granted summary judgment in favor of the Commission on the others. Richardson appeals the disposition of only four of his claims.

At issue in this appeal are: (1) Count II, which alleges that the Commission failed to publicize Richardson's petition for reappointment pursuant to the Commission's rules, and thereby deprived him of the due process protections afforded by the Hawaii and United States Constitutions; (2) Count III, which alleges that the Commission denied Richardson an opportunity to rebut claims made against him and to confront and cross-examine adverse witnesses, an alleged deprivation of procedural due process; (3) Count IV, which claims that the Commission leaked information to the press in violation of *Haw. Const.* art. VI, § 4[6] and Commission Rules 5(C) and 7 and thereby damaged his name and reputation; and (4) Count V, which alleges that two Commission members failed to report possible conflicts of interest to the Commission's chairperson in violation of Commission Rule 5-(B).[7] The district court dismissed Counts III and IV and granted summary judgment on Counts II and V.

Immediately prior to the court's disposition of this case, Richardson presented a "Motion for Abstention," which was denied.

Richardson does not challenge the denial of that motion on appeal.

After judgment was entered against Richardson another person was appointed to fill the vacancy created when his term expired. Subsequently, the Commission filed a motion to dismiss this appeal, arguing that the filling of the vacancy rendered Richardson's request for injunctive relief moot and that the claim for monetary relief was barred because the defendants enjoy absolute immunity. The motions panel referred this motion to the merits panel.

## I

### Motion to Dismiss

We first consider the Commission's motion to dismiss. If either monetary or injunctive relief is available to Richardson, we must deny the motion.

The defendants argue that they are absolutely immune from liability for damages because they are agents of the court and their challenged actions were performed in furtherance of their quasi-judicial functions. In rebuttal Richardson argues that (1) even if defendants are agents of the court, their functions were executive in nature, (2) for this reason they enjoy at best only a qualified immunity, and (3) their entitlement to qualified immunity is a question of fact to be determined at trial.

It is well settled that judges and those performing judge-like functions are absolutely immune from 42 U.S.C. § 1983 damage liability[8] for acts performed in their judicial capacities. *See Stump v. Sparkman,* 435 U.S. 349, 355–57, 98 S.Ct.

---

**6.** *Haw. Const.* art. VI, § 4 provides in relevant part: "[t]he deliberations of the commission shall be confidential."

**7.** Commission Rule 5(B) provides in relevant part:

> If a commissioner knows of any ... litigious relationship as a[n] ... attorney which the commissioner ... had ... with an applicant and the relationship may influence, or appear to influence, the decision of the commissioner as to this applicant, the commissioner shall report this fact to the chairperson.

The allegations of conflict of interest arise from the fact that two Commission members work for law firms that represented media clients (KGMB–TV, Honolulu Advertiser) that had previously sought writs of prohibition against Richardson relating to proceedings that occurred before him. The two commissioners advised the Commission of these circumstances.

**8.** Judicial immunity does not extend to suits for injunctive relief. *Shipp v. Todd,* 568 F.2d 133, 134 (9th Cir.1978).

914

1099, 1104–05, 55 L.Ed.2d 331 (1978); *Pierson v. Ray,* 386 U.S. 547, 553–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1966) (judges); *Sellars v. Procunier,* 641 F.2d 1295, 1301–04 (9th Cir.) (parole board officials), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981). *But cf. Rankin v. Howard,* 633 F.2d 844, 847–49 (9th Cir. 1980) (judge acting in clear absence of jurisdiction cannot claim absolute immunity), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981); *Lopez v. Vanderwater,* 620 F.2d 1229, 1235–37 (7th Cir.) (no immunity for non-judicial acts), *cert. dismissed,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980). Those entitled to absolute immunity have it "because of the special nature of their responsibilities" rather than "because of their particular location within the Government." *Butz v. Economou,* 438 U.S. 478, 511, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978). Thus, when a court official acts in a capacity in which he is not called upon to exercise judicial or quasi-judicial discretion, he is not entitled to absolute judicial immunity. *See Gregory v. Thompson,* 500 F.2d 59, 63 (9th Cir.1974). Consequently, the fact that Hawaii's Constitution attaches the Commission to Hawaii's judiciary "for purposes of administration"[9] does not necessarily confer absolute immunity from § 1983 liability. Instead, we must examine the "functional comparability" of the role of the Commission's members to the role of those officials who have absolute immunity. *See Sellars,* 641 F.2d at 1298.

■ One claiming immunity has the burden of demonstrating entitlement to it. *Butz,* 438 U.S. at 506, 98 S.Ct. at 2910. The Commission contends that its functions are "judicial" in nature because its responsibilities of recommending candidates for judi-

cial office to the appointing officials and of reviewing reappointment petitions requires it to "weigh the merits of [the] candidates," "consider all the evidence," "conduct extensive investigations," and "act very much like judges in attempting objectively to evaluate ... the merits of each candidate or petition." Although the Commission describes its responsibilities in "judicial" terms, these functions bear little resemblance to the characteristic of the judicial process that gave rise to the recognition of absolute immunity for judicial officers: the adjudication of controversies between adversaries. *See Butz,* 438 U.S. at 511–17, 98 S.Ct. at 2913–17; *Sellars,* 641 F.2d at 1299. Rather, these responsibilities indicate that the Commission's functions are executive in nature.[10] *Accord In re Advisory Opinion to the Governor,* 276 So.2d 25, 29 (Fla.1973) (function of Florida's judicial nominating commissions was executive in nature).

■ The Commission also argues that as an "arm of the court" its members are entitled to absolute immunity. In support of this argument, it cites cases that recognize absolute immunity for members of bar association grievance committees. *See Slavin v. Curry,* 574 F.2d 1256, 1266 (5th Cir. 1978); *Clark v. State of Washington,* 366 F.2d 678, 681 (9th Cir.1966). Indeed, these committees are "arms of the courts" and their members enjoy absolute immunity. Nonetheless, the immunity attaches because of the nature of the functions performed by these committees, *i.e.,* prosecuting and adjudicating claims of professional misconduct, which is an "integral part of the judicial process." *See Clark,* 366 F.2d at 681. The mere fact that these "arms" are attached to a judicial body does not alone entitle them to immunity.

9. *Haw. Const.* art. VI, § 4.

10. The Commission attempts to refute this conclusion by observing that the appointment and reappointment of district court judges was a function previously performed by the Chief Justice of the Hawaii State Supreme Court. *See* Hawaii Rev.Stat. § 604–2 (1976). It then argues that the Chief Justice would have been absolutely immune from liability for his actions in the reappointment process, but provides no cases exactly on-point. We are unpersuaded

by this argument because even if the Chief Justice were absolutely immune for decisions made pursuant to his responsibility to appoint district court judges, this fact would not require the recognition of similar immunity for those to whom those responsibilities might be delegated. *Compare Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) *with Nixon v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982).

The question remains whether the Commission's members are entitled to absolute immunity even though they perform an "executive" function. *Scheuer v. Rhodes,* 416 U.S. 232, 238–49, 94 S.Ct. 1683, 1687–92, 40 L.Ed.2d 90 (1974), requires a negative response. In *Scheuer,* the Court held that absolute immunity from § 1983 suits was inappropriate for a state governor and his aides. Instead, those officials were only entitled to a qualified immunity, the scope of which depends upon "the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based." *Id.* 416 U.S. at 247, 94 S.Ct. at 1691. This conclusion reflects a balancing of the need to protect the rights of citizens by providing a damage remedy for constitutional violations with the need to protect officials in the vigorous exercise of their discretionary authority. *See Butz,* 438 U.S. at 504–06, 98 S.Ct. at 2909–10. The Court has subsequently struck similar balances, and has denied absolute immunity to school administrators, *Wood v. Strickland,* 420 U.S. 308, 313–22, 95 S.Ct. 992, 996–1000, 43 L.Ed.2d 214 (1975), and presidential aides. *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). *But cf. Nixon v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (recognizing absolute Presidential immunity from civil rights actions). We strike the same balance here, and hold that a qualified, good faith immunity and the "firm application of the Federal Rules of Procedure" amply protect the defendants from "insubstantial lawsuits." *Butz,* 438 U.S. at 507–08, 98 S.Ct. at 2911.[11]

For these reasons we hold that the Commission's members are not entitled to absolute immunity. Because we conclude that monetary relief may be available depending on the resolution at trial of the qualified immunity question, we deny the motion to dismiss and need not reach the issue of whether Richardson's prayer for injunctive relief is moot.

## II

### Abstention

Although neither party briefed the issue of abstention, we raised it at oral argument, address it *sua sponte,*[12] and find this case appropriate for application of the abstention doctrine enunciated in *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■ Since *Pullman* the federal courts have recognized that there are "extraordinary and narrow" exceptions to their duty to adjudicate controversies properly before them. *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959); *Pue v. Sillas,* 632 F.2d 74, 78 (9th Cir.1980). The *Pullman* version of the abstention doctrine provides for abstention "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *County of Allegheny,* 360 U.S. at 189, 79 S.Ct. at 1063. We have delineated three criteria for application of *Pullman* abstention: (1) the complaint must touch a sensitive area of social policy into which the federal courts should not enter unless there is no alternative to adjudication; (2) a definitive ruling on the state issues by a state court could obviate the need for constitutional adjudication by the federal court; and (3) the proper resolution of the possibly determinative state law issue is uncertain. *See Manney v. Cabell,* 654 F.2d 1280, 1283 (9th Cir.1980), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982); *Canton v. Spokane School District No. 81,* 498 F.2d 840, 845 (9th Cir.1974).

---

11. Courts have recognized that executive-branch officers might be entitled to absolute immunity with regard to activities that imitate judicial and legislative functions that are the basis for conferring absolute immunity from § 1983 liability in some cases. *See, e.g., Butz,* 438 U.S. at 513–17, 98 S.Ct. at 2914–16; *Apton v. Wilson,* 506 F.2d 83, 94 (D.C.Cir.1974). This case does not present such activities.

12. *See* C. Wright, *Law of Federal Courts* § 52, at 220 n. 18 (3rd ed. 1976).

All three criteria are satisfied in this case. First, this case involves delicate questions that relate to the operation of Hawaii's judicial merit selection system. We would be hard pressed to conceive of an area of social policy more sensitive than one that directly relates to the appointive selection of a state's judiciary. Moreover, the fact that Hawaii amended its constitution to provide for a merit selection system less than four years ago further demonstrates that this is a matter of significant local concern. *Cf. Rancho Palos Verdes Corp. v. City of Laguna Beach,* 547 F.2d 1092, 1094 (9th Cir.1976) (finding state's constitutional and statutory provisions regarding land use planning indicative of "sensitive" nature of that policy area). The "exigent demands of federalism" that precipitated the recognition and development of the abstention doctrine [13] are at least as great here as in any of the cases in which we have found *Pullman* abstention appropriate. *See, e.g., Manney,* 654 F.2d at 1284 (state's operation of detention facilities for juveniles); *International Brotherhood of Electrical Workers v. Public Services Commission,* 614 F.2d 206, 212 (9th Cir.1980) (regulation of state's public utilities; conservation of energy resources); *Rancho Palos Verdes Corp.,* 547 F.2d at 1094 (land use planning); *Garfinkle v. Wells Fargo Bank,* 483 F.2d 1074 (9th Cir.1973) (state's non-judicial system of mortgage foreclosure).

The second test is also satisfied. The state law issues are potentially dispositive of this case in two respects. First, Richardson contends that the treatment given his petition for reappointment did not comport with Fourteenth Amendment due process

requirements. The threshold inquiry in a § 1983 due process claim is whether the defendant was deprived of an interest encompassed by the Fourteenth Amendment's protection of liberty and property. Only after the court is convinced that the plaintiff has a property or liberty interest protected by due process can it evaluate whether the process afforded that interest was adequate. *See Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Whether Richardson can assert a property interest in his position as district court judge depends on the specific rights and benefits conferred upon occupants of that position by Hawaii's constitution and other laws. *See id.* 408 U.S. at 577, 92 S.Ct. at 2709 (property interests stem from state law). *See also Halleck v. Berliner,* 427 F.Supp. 1225, 1236 (D.D.C. 1977); *Francis v. Ota,* 356 F.Supp. 1029, 1032–34 (D.Hawaii 1973).[14] On the one hand, if judicial incumbents are entitled to reappointment unless they are unqualified to remain in office, we would be inclined to think that a constitutionally cognizable "entitlement" exists. *See Roth,* 408 U.S. at 577, 92 S.Ct. at 2709; *Perry v. Sindermann,* 408 U.S. 593, 599–603, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 570 (1972); *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093, 1098 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). On the other hand, if judicial office-holders have no "legitimate claim of entitlement" to preferential consideration of their petitions for reappointment by virtue of their incumbency, they have no cognizable property interest in their positions after the expiration of their fixed terms.

13. C. Wright, *supra* note 12, at 220. *See generally Harrison v. NAACP,* 360 U.S. 167, 176–77, 79 S.Ct. 1025, 1029–30, 3 L.Ed.2d 1152 (1959); *Martin v. Creasy,* 360 U.S. 219, 224, 79 S.Ct. 1034, 1037, 3 L.Ed.2d 1186 (1959); *Sederquist v. City of Tiburon,* 590 F.2d 278, 290 (1978).

14. In *Halleck,* the court applied District of Columbia law to analogous facts and concluded: that plaintiff did not have a property interest which entitled him to the full panoply of due process; but that he did have an interest in

possible reappointment which entitled him to a thorough and fair evaluation of his candidacy by an impartial Commission; and that plaintiff was entitled to such process as would insure that the Commission's evaluation of his candidacy for reappointment was thorough and fair.

427 F.Supp. at 1236. We express no opinion regarding the correctness of that decision, nor regarding what result must follow under Hawaii law.

*See Roth,* 408 U.S. at 576–78, 92 S.Ct. at 2708–09.[15]

■ Second, Richardson's complaint raises several state claims based on alleged violations of Hawaii's due process clause, *Haw. Const.* art. I, § 5, and of the Commission's rules, which have the force and effect of law. A resolution of these claims could obviate the need to prosecute the § 1983 claim.[16]

Finally, we find that this case also satisfies the third, and especially crucial, criterion for application of the *Pullman* doctrine, *i.e.*, it presents an uncertain question of state law. Hawaii's constitution and the Commission's rules provide no firm guidance with regard to whether judicial incumbents have a legitimate claim of entitlement to reappointment, or even to preferential treatment of their petitions for reappointment. In addition, we find no substantial indication of how Hawaii's courts would treat Richardson's state law claims. Because this controversy involves unsettled questions of state law which could not be resolved by the federal courts without substantial difficulty, and because the resolution of these questions might obviate the need to answer a federal constitutional question or will at least cast that question in a different light, we think it proper for the federal courts to abstain from decision until Hawaii's courts have passed on these delicate matters of state law. *See City of Meridian v. Southern Bell Telephone & Telegraph Co.,* 358 U.S. 639, 640–41, 79 S.Ct. 455, 456–57, 3 L.Ed.2d 562 (1959).

Our holding today is consistent with the several policies that compel federal court abstention in limited instances. Among the concerns that have traditionally counseled a federal court to stay its hand are "the desirability of avoiding unseemly conflict between two sovereignities, the unnecessary impairment of state functions, and the premature determination of constitutional questions." *Sederquist,* 590 F.2d at 280 (quoting *Martin v. Creasy,* 360 U.S. at 224, 79 S.Ct. at 1037). All those factors are present here.

Accordingly, we hold that abstention is appropriate.[17]

**15.** The fact that Richardson has asserted a liberty interest by alleging that the Commission damaged his name and reputation by breaching confidentiality does not preclude application of the abstention doctrine. A state court determination of the property question may present Richardson's § 1983 liberty claim in a different posture. The criteria that govern decisions to reappoint may well affect whether Richardson suffered damage to his reputation that would be cognizable as a liberty interest. For example, if Hawaii law requires that petitions for reappointment be considered on par with the applications of other nominees, the Commission's decision not to reappoint merely suggests that the Commission found another candidate more qualified. If, however, incumbents have an entitlement to reappointment which can be denied only if they are found morally or otherwise unqualified to continue in office, the Commission's decision not to reappoint might cast aspersions on an incumbent's character or professional competence.

**16.** As we made clear in *Manney,* 654 F.2d at 1285 n. 7, our holding should not be construed as imposing an exhaustion of remedies requirement upon § 1983 claims. The fact that Richardson attached state law claims to his civil rights claim is not alone enough to justify abstention. It is the fact that these claims are coupled with federal due process claims, which in turn require responses to uncertain questions of state law, that cause us to find abstention appropriate here.

**17.** In deciding that abstention is appropriate, we have been mindful of our earlier statement that civil rights cases "are the least likely candidates for abstention." *Stephens v. Tielsch,* 502 F.2d 1360 at 1362, (9th Cir.1974); *Canton,* 498 F.2d at 846. We think the reluctance to abstain in civil rights cases reflects a two-fold concern. First, that reluctance reflects a desire to confer the benefits of federal adjudication upon plaintiffs who properly invoke federal jurisdiction. *See, e.g., England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 415, 84 S.Ct. 461, 464, 11 L.Ed.2d 440 (1964); *Stephens,* 502 F.2d at 1362. This concern is non-existent here since Richardson is the party who requested abstention. Second, the reluctance reflects a sense that the deprivation of rights "plainly federal in origin and nature" and "not entangled in a skein of state law," such as equal protection or discrimination claims, should be vindicated by federal courts. *See McNeese v. Board of Education,* 373 U.S. 668, 673–74, 83 S.Ct. 1433, 1436–37, 10 L.Ed.2d 622 (1963). *Accord* American Law Institute, Study of the Division of Jurisdiction between State and Federal Courts § 1371(g), at 50 (1969). This case, however, involves due process

## III

## Conclusion

Because the district court should have abstained, we vacate its judgment and remand. Our decision to apply *Pullman* abstention "does not ... [however] involve the abdication of federal jurisdiction, but only the postponement of its exercise." *Harrison v. NAACP,* 360 U.S. at 177, 79 S.Ct. at 1030. At the request of either party, the district court should retain jurisdiction of the federal constitutional issues, pending proceedings in the state courts.[18] *See England v. Louisiana Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *Manney v. Cabell,* 654 F.2d at 1285.

VACATED and REMANDED.

SCHROEDER, Circuit Judge, dissenting.

I respectfully dissent from that portion of the majority opinion which holds that abstention is appropriate in this case. The result of that holding is not only to delay resolution of this dispute, but to prolong potentially disruptive uncertainty in the operation of Hawaii's judicial selection system.

This result would be less disturbing if the defendants, who are the individuals to whom the state has delegated responsibility for judicial selection and retention, had asked the district court to stay its hand. They have not done so. Instead it was the plaintiff who filed a duplicate action in state court on the day before the district court was scheduled to rule in this suit, and who then sought federal abstention over

defendants' objection. In my opinion the district court's refusal was entirely proper. Unlike the principal cases on which the majority relies, the governmental defendants here have not expressed concern about intrusion into sensitive areas of state policy; thus this case does not present the, "exigent demands of federalism" which have influenced courts to incur the high cost of delay which abstention entails. *See* C. Wright, *Law of Federal Courts* § 52 at 220 (3d Ed. 1976); *Manney v. Cabell,* 654 F.2d 1280, 1283 (9th Cir.1980), *cert. denied sub nom. Manney v. Fare,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982); *International Brotherhood of Electrical Workers v. Public Services Commission,* 614 F.2d 206, 209, 212 (9th Cir.1980); *Rancho Palos Verdes Corp. v. City of Laguna Beach,* 547 F.2d 1092, 1093 (9th Cir.1976).

Nor does this case present the complexities and uncertainties of state law which have characterized other abstention cases. *Contrast, Harris County Commissioners Court v. Moore,* 420 U.S. 77, 84–87, 95 S.Ct. 870, 875–77, 43 L.Ed.2d 32 (1975); *Lake Carriers Association v. MacMullan,* 406 U.S. 498, 511–12, 92 S.Ct. 1749, 1757–58, 32 L.Ed.2d 257 (1972); *Manney v. Cabell,* 654 F.2d at 1284–85; *Isthmus Landowners Ass'n v. California,* 601 F.2d 1087, 1091 (9th Cir.1979). The entitlement question which the majority refers to state courts for resolution is no more difficult or unclear than similar entitlement issues which federal courts have routinely decided. *See, e.g., Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33

---

claims, which are necessarily enmeshed in state law. Whether Richardson has a property interest guarded by due process can only be decided with reference to state law.

**18.** We recognize that our holding assumes that Richardson can pursue this matter in Hawaii's courts. Both parties indicated in their briefs that Richardson had filed a complaint similar to the one before the district court in the Circuit Court of Hawaii the day before the district court ordered the dismissals and summary judgments. Although the record does not indicate the status of that case, Richardson informed us at oral argument that it had been

dismissed as *res judicata,* presumably because of the lower court ruling now before us. If this is the case, we note that Richardson can seek to reopen the state court proceedings under Haw.R.Civ.P. 60(b)(5), which provides:

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons: ... (5) ... a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.

Thus, Richardson is not without access to Hawaii's courts.

L.Ed.2d 548 (1972); *Golden State Transit Corp. v. City of Los Angeles*, 686 F.2d 758 (9th Cir.1982); *Vanelli v. Reynolds School District No. 7*, 667 F.2d 773 (9th Cir.1982); *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093 (9th Cir.1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982).

For these reasons I would proceed to decide the merits of appellant's appeal from the district court's judgment.