720 F.2d 1132
 Booker T. HILLERY, Jr., J.R. Butts, David Middleton, Glenn
Bailey, Plaintiffs- Appellees,
v.
Ruth L. RUSHEN, Director of Corrections, State of
California; Samuel D. Yockey, Deputy Director of
Corrections; R.L. Pulley, Warden, California State Prison,
San Quentin, California, and J.A. Ingram, Defendants-Appellants.
 No. 82-4609.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 14, 1983.
Decided Nov. 25, 1983.
 
 Jack W. Londen, Morrison & Foerster, San Francisco, Cal., for plaintiffs-appellees.
 Kenneth C. Young, San Francisco, Cal., for defendants-appellants.
 Appeal from the United States District Court for the Northern District of California.
 Before TANG and REINHARDT, Circuit Judges, and SMITH,* District Judge.
 REINHARDT, Circuit Judge:
 
 
 1
 California prison officials appeal from the district court's issuance of a permanent injunction prohibiting them from enforcing revisions of Chapter 4600 of the Department of Correction's Administrative Manual ("Chapter 4600"). Chapter 4600 governs the types and amounts of personal property prison inmates in California are allowed to possess. Appellants revised Chapter 4600 without following the notice, comment, and hearing procedures of the Administrative Procedure Act of the California Government Code ("APA"). Cal.Gov't Code tit. II, div. 3, pt. 1, ch. 3.5 (West 1980). Appellees, inmates at San Quentin, challenged the revisions on federal constitutional and state-law grounds. Exercising its pendent jurisdiction, the district court found the revisions invalid because in adopting them the Department of Corrections failed to follow the procedures set forth in the APA. We affirm.
 
 
 2
 The state prison officials challenge the district court's holding that they were required to follow the provisions of the California APA in adopting the revisions. They also argue that the district court should have abstained from deciding the state-law issues, that the district court's exercise of pendent jurisdiction was improper because the plaintiffs had failed to exhaust their administrative remedies, that the district court's judgment violates the tenth amendment of the United States Constitution, and that the district court's decision contravenes the Supreme Court's admonishments that federal courts not intrude in the administration of state prisons. We reject these arguments.
 
 I. STATEMENT OF FACTS
 
 3
 On January 18, 1982, appellant Samuel Yockey, Deputy Director of the California Department of Corrections, acting on behalf of the Department's Director, Ruth Rushen, revised Chapter 4600 without following the notice, comment, and hearing procedures of the California APA. Revised Chapter 4600 was to be implemented at all California prisons on July 31, 1982. In anticipation of Chapter 4600's implementation, appellees, four inmates at San Quentin, brought this action on behalf of the class of all San Quentin inmates, seeking to enjoin appellants from enforcing revised Chapter 4600 and San Quentin's conforming rules.
 
 
 4
 The San Quentin inmates alleged nine claims under federal and state law. The district court noted that the revisions to Chapter 4600, which "include new and severe limitations on the volume and kinds of permitted inmate property," raise "very serious issues under the sixth and fourteenth amendments [of the United States Constitution]." The court, however, found it unnecessary to decide those issues. Exercising pendent jurisdiction, it held revised Chapter 4600 invalid because, contrary to the requirements of section 5058(a) of the California Penal Code, appellants promulgated it without following the procedures mandated by the APA. Finding that appellees would suffer irreparable injury, the court concluded that they were entitled to a preliminary injunction. Because no triable issues remained, it issued a permanent injunction and final declaratory judgment.
 
 II. COMPLIANCE WITH THE CALIFORNIA APA
 
 5
 Defendants do not dispute that in revising Chapter 4600 the prison administration did not follow the procedures set forth in the California APA. Although it is difficult to determine from the briefs filed by the state officials precisely what points they are trying to make on appeal, they seem to be arguing that detailed rules, as distinguished from general regulations, are for some unexplained reason exempt from the requirements of the APA. They also seem to be arguing that section 3190 of Title 15 of the California Administrative Code, which was promulgated in compliance with the APA, delegates to the Director the power to establish guidelines without following the strictures of the APA. Cal.Admin.Code tit. XV, Sec. 3190 (1977).[1] They claim that nothing in the California statutes, regulations, or case law prevents such a delegation to deal with a situation that must be addressed in minute detail, or that requires variety of treatment among institutions. We find the state's position wholly without merit.
 
 
 6
 The California Penal Code plainly requires that the Director comply with the strictures of the APA whenever he prescribes or amends "rules and regulations for the administration of prisons." Cal.Penal Code Sec. 5058(a) (West 1980). The APA defines "regulation" as
 
 
 7
 every rule, regulation, order or standard of general application or the amendment, supplement or revision of any such rule, regulation, order or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure.
 
 
 8
 Cal. Gov't Code Sec. 11342(b) (West 1980). The APA provides for only two exceptions--one for regulations relating only to the internal management of the state agency and one for forms prescribed by the agency or instructions relating to the use of the forms. Id.
 
 
 9
 Any argument that revised Chapter 4600 is not a regulation, or that it falls within one of the two exceptions provided for in the APA, is foreclosed by the California Court of Appeals' recent decision in Stoneham v. Rushen, 137 Cal.App.3d 729, 188 Cal.Rptr. 130 (1982). In that case, prison inmates challenged the standardization of the system used by the Department of Corrections to classify inmates for purposes of determining which prison they should be assigned to. The court found that the Department was required to follow the procedures set forth in the APA because the new scheme "embod[ies] ... a rule of general application significantly affecting the ... prison population." Id. at 736, 188 Cal.Rptr. 130. Because revised Chapter 4600 fits that description precisely, Stoneham leaves appellants no room to argue that these rules are beyond the scope of the APA as it has been interpreted by the California courts.
 
 
 10
 Appellants urge us to read into California law a third exception to the requirements of the APA. They argue that, when the Director feels that a problem must be dealt with flexibly or in minute detail, he should be able to delegate to himself, by means of a properly promulgated regulation, the power to deal with the problem without following the APA procedures. We agree with the district court that California law permits no such delegation.[2]
 
 
 11
 Appellants cite no authority for their somewhat unusual theory. We find no reason to believe that California allows its agencies to avoid following the procedures state law requires them to follow simply by delegating to themselves the power to ignore those procedures. Were we to create the exception to the APA suggested by the prison authorities we would strip the statutory requirement that regulations be promulgated pursuant to the APA of all its force. Moreover, the structure and language of the APA is wholly inconsistent with appellants' theory. The express inclusion of two exceptions in the statute suggests strongly that further exceptions are not available. More importantly, the very terms of the definition of "regulation"--including as they do "the amendment, supplement, or revisions of rules, regulations, orders or standards to implement, interpret, or make specific the law enforced or administered," Cal.Gov't Code Sec. 11342(b) (West 1980) (emphasis supplied)--make it clear that even detailed guidelines are subject to the APA.
 
 
 12
 Armistead v. State Personnel Board, 22 Cal.3d 198, 200, 149 Cal.Rptr. 1, 583 P.2d 744 (1978), further demonstrates the incorrectness of appellants' view of California law. In Armistead, the California Supreme Court refused to give any deference to an administrative interpretation of an agency rule when that interpretation was not promulgated in accordance with the procedural requirements of the APA. Such a holding was necessary, the court said, in order to prevent agencies from avoiding the strictures of the APA by denominating rules as "policies," "interpretations," "instructions," "guides," "standards," and the like, and by placing rules in "internal organs of the agency such as manuals, memoranda, bulletins, or [directing them] to the public in the form of circulars or bulletins." Id. at 205, 149 Cal.Rptr. 1, 583 P.2d 744 (quoting Senate Interim Committee on Administrative Regulations, First Report to the 1955 Legislature, at 9). The regulations here fit that description perfectly: they are "guidelines" placed in the agency's manual. The court also noted the history of California state agencies' efforts to avoid their legal obligation to comply with procedural requirements before enacting regulations. It said, "the manner of avoidance [of the APA] takes many forms." Id. (quoting Senate Interim Committee on Administrative Regulations, First Report to the 1955 Legislature, at 9). The argument that the Director may delegate to himself the power to adopt regulations without following the APA's procedure is simply another attempted form of "avoidance."
 
 
 13
 Moreover, even if the asserted delegation would not be contrary to statute, in order to prevail appellants would have to show that section 3190 provides for a delegation to the Director. Appellants point to nothing in the regulation's language or history that even remotely suggests that the section was intended to create any form of self-delegation or dispense with the Director's obligation to follow the APA procedures. In fact, the language of the regulation demonstrates the contrary. By referring to "guidelines provided by the director" the section tacitly recognizes that the Director is obligated to follow the APA procedures. "Guidelines," after all, clearly constitute "standard[s] of general application" within the meaning of California's definition of "regulation." Cal.Gov't Code Sec. 11342(b) (West 1980). Indeed, the absence of any indication in the legislative history or in the regulation that a self-delegation was contemplated would, in itself, be sufficient to foreclose a court from finding that one exists. If it was not made clear on the face of a regulation, or in the notice, comments, and hearings, that a delegation of power was intended, the subsequent creation, by implication, of a delegation would effectively deny interested persons their right to notice, comment, and hearing with regard to the delegation.
 
 III. ABSTENTION
 
 14
 Defendants argue that the district court's exercise of pendent jurisdiction violates the doctrine of abstention enunciated in Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). This court recently addressed the issue of abstention in a civil rights class action challenging conditions of confinement at a juvenile detention facility. In Manney v. Cabell, 654 F.2d 1280 (9th Cir.1980), we held that the district court should have abstained from deciding that conditions in the juvenile facility violated the United States and California Constitutions' proscriptions against cruel and unusual punishment and California statutory provisions where the meaning of the California statutory provisions was unclear. Appellants argue that the reasoning in Manney required the district court to abstain. We disagree.
 
 
 15
 In Manney we reiterated that to justify abstention all three of the following exceptional circumstances must be present:
 
 
 16
 (1) The complaint [must] 'touch[ ] a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open.'
 
 
 17
 (2) 'Such constitutional adjudication [must] plainly be [susceptible of being] avoided if a definitive ruling on the state issue would terminate the controversy.'
 
 
 18
 (3) The possibly determinative issue of state law [must be] doubtful.
 
 
 19
 Manney, 654 F.2d at 1283 (quoting Canton v. Spokane School District No. 81, 498 F.2d 840, 845 (9th Cir.1974)). In this case, the third exceptional circumstance is absent. We therefore need not consider the first and second exceptions.
 
 
 20
 Appellants argue that the district court should have abstained because the precise issue of state law--i.e., whether an agency may, by properly promulgated regulation, delegate to itself authority to promulgate regulations without following the notice, comment, and hearing procedures of the APA--has never been decided by the California courts. That is not a sufficient reason for abstaining. The Supreme Court has stated that the doctrine of abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). Federal courts need not abstain from deciding every issue of state law that the state's courts have not had occasion to decide. Because arguments can be presented in an infinite number of ways, a contrary holding would render abstention the rule rather than the "extraordinary and narrow" exception that it is. If a statute's language or legislative history, or its construction by the state's courts, makes it clear that a proposed interpretation is erroneous, federal courts should not hesitate to rule on the state-law issue. See Pue v. Sillas, 632 F.2d 74 (9th Cir.1980) (abstention improper even though no California court had considered the validity of the California law).
 
 
 21
 For the reasons set forth in Part II of this opinion, we agree with the district court that the state-law issue is clear and that appellants' argument is "frivolous." We hold that this was not an appropriate case for abstention and that the district court did not abuse its discretion in so concluding.[3]
 
 
 22
 IV. EXHAUSTION OF STATE ADMINISTRATIVE REMEDIES
 
 
 23
 Appellants argue on appeal that the district court's exercise of pendent jurisdiction in this case was improper because appellees failed to exhaust their state administrative remedies. They claim that the district court was therefore acting as a state court in a manner in which a state court faced with a similar case would not have been able to act. We conclude that under California law appellees were not required to exhaust any administrative remedies before filing this action.[4]
 
 
 24
 Appellants note that the California Government Code gives "any interested person" the power to petition a state agency to adopt, amend, or repeal a regulation. Cal.Gov't Code Sec. 11347 (West 1980). They argue that appellees were required to pursue that remedy before seeking judicial relief. We disagree.
 
 
 25
 A California court did on one occasion state in dictum ten years ago that section 11347 [then section 11426] provided a remedy that parties were ordinarily required to exhaust before challenging a regulation in court. See California Medical Association v. Brian, 30 Cal.App.3d 637, 656, 106 Cal.Rptr. 555, 568 (1973). But even assuming that that was an accurate statement of California law as it then stood,[5] a conclusion that appellees are presently required, under current California law, to pursue their section 11347 remedy before seeking judicial relief is wholly unwarranted.
 
 
 26
 Appellants inexplicably failed, in their briefs, to mention section 11350(a) of the Government Code and the recent amendments thereto. That section allows "any interested person" to obtain a judicial declaration of the validity of any regulation and provides that a regulation may be declared invalid for substantial failure to comply with the provisions of the APA. Cal.Gov't Code Sec. 11350(a) (West 1980). In 1981 and 1982, clearly rejecting the Brian dictum, the California legislature amended section 11350(a) to provide specifically that "[t]he right to judicial determination shall not be affected by the failure either to petition or to seek reconsideration of a petition filed pursuant to section 11347.1."[6] Thus, section 11350(a) now makes it plain that persons wishing to challenge the validity of a regulation in court are not required first to petition the administrative agency to repeal the regulation.
 
 
 27
 In response to the court's inquiry as to why the California Attorney General failed to advise us of section 11350(a), appellants suggested that while the section may have entitled appellees to a declaratory judgment without filing a petition under section 11347, the inmates were nevertheless required to file such a petition in order to obtain injunctive relief. We find this argument wholly without merit. It would have made no sense for California to have dispensed with an exhaustion requirement for plaintiffs seeking a declaration of invalidity but not for plaintiffs seeking a declaration of invalidity and an injunction against enforcement of the invalid regulations. Such an interpretation of California law--leaving courts powerless, in most cases, to enjoin enforcement of regulations they find invalid--would render the amendments to section 11350(a) largely ineffective. We have no doubt that the 1981 and 1982 amendments made any prior exhaustion requirement inapplicable not only to suits for declaratory relief also but to suits for both declaratory and injunctive relief.
 
 
 28
 Our construction of section 11350(a) is in accord with the practice of the California courts, which have commonly granted both declaratory and injunctive relief in cases brought under that section and its predecessor. See, e.g., Sperry & Hutchinson Co. v. California State Board of Pharmacy, 241 Cal.App.2d 229, 50 Cal.Rptr. 489 (1966) (awarding declaration and injunction pursuant to former Cal. Gov't Code Sec. 11440, predecessor to Sec. 11350), Ford Dealers Association v. Department of Motor Vehicles, 32 Cal.3d 347, 185 Cal.Rptr. 453, 650 P.2d 328 (1982) (same). Indeed, since enactment of the amendments dispensing with the exhaustion of remedies requirement, a California court has granted declaratory relief and a writ of mandamus in a case remarkably similar to this one. See Stoneham v. Rushen, 137 Cal.App.3d at 729, 188 Cal.Rptr. 130 (1982) (suit by two prison inmates to halt implementation of newly adopted inmate classification system until Director of Corrections complied with notice and hearing requirements of the APA). Although the procedural history of the case is set forth in full in the Stoneham opinion, there is no indication that the inmates sought repeal of the regulation involved before filing their suit for judicial relief.
 
 
 29
 Furthermore, California law excuses a party from exhausting his administrative remedies when he "can positively state what the administrative agency's decision in his particular case would be." See Ogo Associates v. City of Torrance, 37 Cal.App.3d 830, 834, 112 Cal.Rptr. 761, 763 (1974). We find that appellees have met that burden here. The record indicates that appellants refused to comply with the APA procedures despite requests that they do so. The district court found that appellants were "insisten[t] on putting revised [Chapter 4600] into effect without delay." It even noted evidence that appellants attempted to implement revised Chapter 4600 after entry of the temporary restraining order. In view of the foregoing, we find that, had appellees petitioned the Department of Corrections under Government Code Section 11347 to repeal revised Chapter 4600, they would "positively" have received an adverse decision.[7]V. TENTH AMENDMENT
 
 
 30
 Appellants argue that the tenth amendment to the United States Constitution prohibits the federal courts from exercising pendent jurisdiction in the context of state prison litigation because the power to operate state prison systems is not delegated to the United States by the Constitution. U.S. Const. amend. X. That argument is frivolous. The Constitution does delegate to the federal courts judicial power over "cases ... arising under ... the laws of the United States." U.S. Const. art. III, Sec. 2, cl. 1. That power includes judicial power over state-law issues in such cases. See United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The judicial power over the state-law issues is properly exercised even if resolution of the state-law issues obviates the need to address the federal issues. See Siler v. Louisville & Nashville R.R. Co., 213 U.S. 175, 191, 29 S.Ct. 451, 454, 53 L.Ed. 753 (1909). As the Constitution has been read to extend the judicial power of the United States to state-law issues in cases arising under the laws of the United States, the tenth amendment adds nothing to appellants' argument.
 
 VI. FEDERAL OVERSIGHT OF STATE PRISONS
 
 31
 Appellants argue that the district court's exercise of pendent jurisdiction in this case contravenes the Supreme Court's admonishment against using the rubric of state-created rights as an avenue for federal oversight of state prisons. That argument also lacks merit.
 
 
 32
 Appellants cite the Supreme Court's recent opinion in Hewitt v. Helms, --- U.S. ----, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983), in which the Court noted that
 
 
 33
 the creation of procedural guidelines to channel the decision-making of prison officials is, in the view of many experts in the field, a salutary development. It would be ironic to hold that when a State embarks on such desirable experimentation it thereby opens the door to scrutiny by the federal courts.
 
 
 34
 Hewitt v. Helms is, however, inapposite. There, the Court cautioned that states may be more reluctant to provide prisoners with procedural protections if such protections are deemed ipso facto to constitute liberty interests protected by the fourteenth amendment. The Court was concerned with federal courts conferring additional federal procedural protections when states choose to confer protections of their own, but not when they do not. Here, the district court was not conferring additional federal protections. Rather, it was exercising its pendent jurisdiction to enforce the protections that California itself had conferred.[8]
 
 VII. CONCLUSION
 
 35
 We conclude that the district court was correct in holding that California law required the Department of Corrections to follow the procedures of the California APA in revising Chapter 4600. We further conclude that the district court properly refused to abstain from exercising pendent jurisdiction over the state-law claim and that California law did not require appellees to petition the Department of Corrections to repeal or amend revised Chapter 4600 before challenging it in court. Accordingly, we hold that the district court properly enjoined appellants from enforcing revised Chapter 4600 until they complied with the requirements of the California APA.
 
 
 36
 AFFIRMED.
 
 
 
 *
 Honorable Russell E. Smith, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 Section 3190 reads as follows:
 Wardens and superintendents will establish a list of personal property items and the maximum amount of such items an inmate may have in his or her possession within the institution. Within the guidelines provided by the director, institutions should permit inmates to possess personal property items that present no threat to institution security or the safety of persons, and to the extent that such items do not overcrowd the inmate's living quarters. All institutions housing male inmates will provide all other institutions and the director with no less than two copies of the institution's current list of allowable inmate personal property. Upon an inmate's transfer between institutions of the department, the sending institution is responsible for the inmate's disposition of property not allowed at the receiving institution.
 (emphasis supplied).
 
 
 [2]
 This case does not present the question whether the director may under certain circumstances delegate to the wardens and superintendents of individual institutions the power to devise particular rules applicable solely to those institutions. Nor does it present the question whether the wardens and superintendents may promulgate such rules without complying with the APA. Although some institutions are exempted from certain provisions of the guidelines involved here, the guidelines at issue (1) were adopted by the Director of the Department of Corrections and (2) are of general applicability
 
 
 [3]
 We apply an abuse of discretion standard in reviewing a district court's holding on abstention. See Midkiff v. Tom, 702 F.2d 788, 789 n. 1, 799 (9th Cir.1983); Turf Paradise, Inc. v. Arizona Downs, 670 F.2d 813, 819 (9th Cir.) cert. denied, 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982); Shamrock Dev. Co. v. City of Concord, 656 F.2d 1380, 1385 (9th Cir.1981)
 
 
 [4]
 Appellants here argue that California's law regarding exhaustion of administrative remedies applies. For purposes of this case, we assume, without deciding, that the state-law regarding exhaustion of administrative remedies, not the looser federal standard applied in civil rights cases, applies with regard to a state-law claim pendent to a federal civil rights claim. We note, however, that while some courts have held that a federal court is without jurisdiction over cases over which the state whose substantive law applies has deprived its courts of jurisdiction, see, e.g., Wright v. The Praetorians, 152 F.2d 856 (5th Cir.1945) (federal court may not entertain action for injunction against fraternal benefit associations where state law bars such actions in state courts), others have refused to so limit the federal court's jurisdiction under similar circumstances. See, e.g., Szantay v. Beech Aircraft Corp., 349 F.2d 60 (4th Cir.1965) (district court may entertain suit by nonresident against foreign corporation on a cause of action arising in another state despite bar to such suits in state courts)
 
 
 [5]
 Federal courts exercising pendent jurisdiction over state law claims must apply state law as the state's highest court would. See Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967). In interpreting state law, a state's highest court would consider dictum in a decision by a lower state court persuasive, but certainly not binding. For purposes of this case, we assume, without deciding, that under California law, as it stood in 1973, the power to initiate a proceeding to adopt, amend, or repeal a regulation constituted an administrative remedy that ordinarily required exhaustion before judicial review became available. Such a conclusion is by no means compelled, however. Generally speaking, the possibility that a law might be amended or repealed does not prevent a party with standing from challenging the law's validity in court. Whether the provision in California law allowing any interested party to initiate a proceeding to repeal or amend a regulation modified that general rule is questionable at best. The original rationale behind the exhaustion of administrative remedies doctrine suggests that section 11347 does not constitute the type of remedy that a party must exhaust before resorting to the courts. In Porter v. Investors Syndicate, 286 U.S. 461, 468, 52 S.Ct. 617, 619, 76 L.Ed.2d 1226 (1932), cited with approval in Abelleira v. District Court of Appeals, Third District, 17 Cal.2d 280, 295, 109 P.2d 942, 950 (1941), the Supreme Court explained the rationale for the exhaustion of administrative remedies doctrine. The Court said that administrative remedies must be exhausted before an administrative agency's action may be challenged in court because until that is done "the legislative process remains incomplete." Section 11347, however, allows interested persons to petition an agency to "amend" or "repeal" a regulation. Those words suggest that the legislative process that gave rise to the relevant regulation is already complete and that interested persons are being authorized to initiate a new legislative process to change the regulation
 
 
 [6]
 Except for the words "either to petition or," the language quoted in text was added in 1981. 1981 Cal.Stat. 2305. The words "either to petition or" were added the following year. 1982 Cal.Legis.Serv. 408 (West). The 1982 amendment became effective on March 1, 1982. Id. at 409
 
 
 [7]
 The California Supreme Court's recent holding in Sea and Sage Audubon Soc'y, Inc. v. Planning Comm'n of the City of Anaheim, 34 Cal.3d 412, 194 Cal.Rptr. 357, 668 P.2d 664 (1983), is not to the contrary. In finding that pursuing the administrative remedies was not futile in that case, the Court noted that "the council had never addressed plaintiffs' specific legal challenges." Id. at 419, 194 Cal.Rptr. at 360, 668 P.2d at 667. Here, by contrast, appellants were specifically requested to follow the APA procedures and refused to do so. And unlike the remedy involved in Anaheim, the remedy here would have required appellees to petition the very agency that had recently refused their request that it follow the APA procedures
 
 
 [8]
 Appellants also cite Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982), in which this court, in the context of litigation under the eighth amendment, cautioned that federal courts should not make policy choices concerning prisons. That case is also inapposite. Here, the district court made no policy choices; it merely enforced the policy choices made by California