**Viola Armijo ROUSE, Plaintiff,**

v.

**The JUDGES OF the CIRCUIT COURT OF COOK COUNTY; the Honorable Harry G. Comerford, Chief Judge, Circuit Court of Cook County; the Chicago Bar Association, John D. Hayes, President, Chicago Bar Association; John S. Adler, Chairman, Committee on Evaluation of Candidates, Chicago Bar Association; Defendants.**

No. 85 C 4185.

United States District Court, N.D. Illinois, E.D.

May 21, 1985.

Edward T. Stein, Singer & Stein, Chicago, Ill., for plaintiff.

Richard Phelan, Roseann Oliver, Phelan, Pope and John, John F. McCarthy, McCarthy and Levin, William G. Sullivan, Lance Jones, Office of the Atty. Gen. of Illinois, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Viola Armijo Rouse ("Plaintiff") has brought a two-count complaint pursuant to 42 U.S.C. § 1983 seeking redress for the alleged deprivation of her property and liberty rights under the Fourteenth Amendment to the United States Constitution. The defendants are the Judges of the Circuit Court of Cook County and the Honorable Harry G. Comerford, Chief Judge of that Court (the "Judges"), and the Chicago Bar Association and both its president and the chairman of its Committee on Evaluation of Candidates (the "C.B.A."). In essence, Plaintiff complains that her "not recommended" rating by the C.B.A. unconstitutionally denied her a fair opportunity to be considered by the Judges for election to the position of Associate Judge of the Circuit Court.

More particularly, Plaintiff alleges that she is an attorney, licensed to practice law in Illinois, and currently employed as an Assistant Cook County Public Defender. (Complaint, ¶ 3.) Plaintiff meets the minimum requirements for becoming an Associate Judge and wishes to pursue that career. Plaintiff alleges that the Circuit Court of Cook County "has delegated to the Chicago Bar Association the screening and the initial evaluation of potential candidates for judicial office in Cook County." (Complaint, ¶ 4.) No candidate will be considered for that office unless he or she is recommended by the C.B.A. (Complaint, ¶ 6.)

Plaintiff submitted her name as a potential candidate and followed all of the procedures of the C.B.A. for pursuing her candidacy. (Complaint, ¶ 12.) As is customary under the C.B.A. guidelines, Plaintiff was afforded a hearing before a panel of the Committee on Evaluation of Candidates and thereafter received written notice that she was found "not recommended" by the C.B.A. because of a lack of "judicial temperament" and "professional experience." (Complaint, ¶ 27.) Plaintiff's "not recommended" rating has the effect of excluding

her from further consideration for the position of associate judge because candidates who are "not recommended" by the C.B.A. are not eligible for election by the Judges.* Finally, Plaintiff alleges that the investigation of her candidacy and subsequent hearing was unfair in major part because the chairman of her hearing panel harbored a bias against her. Thus Plaintiff claims that her liberty and property interests in a fair consideration for the position of associate judge were taken from her without due process of law. Plaintiff requests, as relief, *inter alia,* that this court declare defendants' selection process unconstitutional, declare that the selection process was not followed in Plaintiff's case, and enjoin defendants to consider Plaintiff as a recommended candidate in the current election of associate judges.

Both the Judges and the C.B.A. have filed motions attacking the complaint. The Judges initially ask this court to refuse to consider this controversy on the principles of abstention and comity. The Judges further move to dismiss the complaint on the grounds that Plaintiff's allegations do not implicate a protected liberty or property right under the Fourteenth Amendment of the United States Constitution. The C.B.A. has moved to dismiss the complaint against it on the grounds that its actions with respect to Plaintiff's candidacy are those of a private association and not under color of state law. The C.B.A. also argues that the relief requested by Plaintiff—requiring her name to be placed on the judicial ballot—violates the C.B.A.'s First Amendment right of freedom of speech.

Because the election of Associate Judges is already underway and there will not be another election for two years, this court has considered the matter on an expedited basis.

### Abstention and Comity

■ The Judges argue that a federal court should not place itself in the position of overseeing the screening and selection process of associate state court judges but rather should require Plaintiff to repair to the state courts to seek redress. The Judges rely on *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, wherein the Supreme Court has repeatedly cautioned the federal courts against interfering with the exercise of a state's sovereign judicial authority absent compelling reasons for doing so. Thus, federal courts should not intervene in pending state court criminal actions, *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), or pending civil actions in which the state courts have an overriding interest, *Webb v. Webb,* 451 U.S. 493, 101 S.Ct. 1889, 68 L.Ed.2d 392 (1981). Superficially, the Judges' position seems tenable because the state courts would ideally be the forum for review of the operation of state court rules and practices and those adopted by the C.B.A. to which the Judges defer, without intrusion by this court.

■ However, the argument in favor of abstention must be rejected. Plaintiff's claim does not arise from or relate to the subject of a pending civil or criminal state suit. The state proceeding (screening and election of Associate Judges) has been completed and never involved any state court lawsuit. Further, non-intervention arguments have been rejected by federal courts in cases which seek review of the administration of the state courts. *Pulliam v. Allen,* —— U.S. ——, 104 S.Ct. 1970, 1979–1980, 80 L.Ed.2d 565 (1984); *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980). Federal courts are extremely reluctant to abstain in civil rights cases arising under the federal constitution because Plaintiff should be entitled to the benefit of federal adjudication of such claims. *Stephens v. Tielsch,* 502 F.2d 1360 (9th Cir. 1974). In this case, where Plaintiff seeks an immediate injunction of an ongoing but finite selection process, this court cannot deprive Plaintiff of a federal forum for the

---

* Associate judges are elected by the full Circuit Court Judges. The ballot contains the names of two qualified candidates for each available position. Ill.Rev.Stat. ch. 110A, § 39.

airing of her constitutional claims by effectively rendering them moot through an act of abstention.

The Judges rely heavily upon *Richardson v. Koshiba*, 693 F.2d 911 (9th Cir.1982). While this court has no quarrel with the principles enunciated in that opinion, it is distinguishable from the case at bar. There it was the *plaintiff*, not the defendants, who sought and obtained federal abstention. *Id.* at 913. The court placed great weight on the fact that it was not denying to the plaintiff a desired federal forum. *Id.* at 917 n. 17. Secondly, the property interest or. entitlement question under the due process clause involved the interpretation of state law, the bar association rules expressly given the force and effect of state law and the state constitution, concerning the status of a sitting state court judge. *Id.* at 912, 916, 917. Here, defendants, not Plaintiff, seek abstention. Further, Plaintiff's claim of entitlement in this case does not involve a difficult state law question because she does not presently hold a position for which she seeks protection. Rather, she is simply a defeated contender claiming constitutional deficiencies in the selection process. Finally, the clock was not running in the *Richardson* case as it is here where Plaintiff seeks to be included in an ongoing election. Accordingly, the Judges' motion for abstention is denied.

### State Action

In order for Plaintiff to plead a § 1983 claim against the C.B.A., she must affirmatively allege that the C.B.A.'s actions in her case were not those of a private association but those of a state actor. Plaintiff has made such allegations. (Complaint, ¶¶ 6, 8, 9, et al.) Thus, the court must determine whether the C.B.A.'s screening and subsequent "not recommended" finding occurred under color of state law.

In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982), the Supreme Court enunciated the essential elements of an action which may be fairly attributable to a state.

> First, the deprivation must be caused by the exercise of some right or privilege by the State or by a rule of conduct created by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

*Lugar v. Edmondson Oil Co.* at 937, 102 S.Ct. at 2753 (citation omitted).

The first prong of this test is clearly met, since the Judges determine the method of selecting judges. The second is more problematic. The C.B.A. is a private association. A state actor, however, need not be a public official. Private actors who perform exclusive public functions are, for these purposes, state actors. *Terry v. Adams*, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Further, private parties who *de facto* perform governmental functions by controlling public officials or acting as their agents are acting under color of state law, *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Adickes v. Kress Co.*, 398 U.S. 144, 169–171, 90 S.Ct. 1598, 1614–1616, 26 L.Ed.2d 142 (1970).

The C.B.A. clearly performs many functions in screening and recommending candidates for judicial office solely as a private association. For example, the C.B.A. evaluates the qualifications of full Circuit Court judges running for reelection and subsequently publishes those recommendations for the guidance of the electorate. As revealed by the memoranda in this case, the C.B.A. also reviews and evaluates sitting associate Circuit Court judges who are seeking retention and transmits its findings to the Judges who subsequently vote on those candidates. It is clear that in both situations the C.B.A. acts independently of any state function or the judges of the state court and acts without binding effect. In those situations the candidates have already been determined and the C.B.A. is

simply commenting on their qualifications. Thus such recommendations do not perform a state function and are not under color of state law.

 However, as alleged in the complaint, the role of the C.B.A. in evaluating the qualifications of candidates for *new* associate judgeships is quite different. In that situation, the C.B.A. does more than simply rate the qualifications of existing candidates so that its ratings may subsequently be used by the sitting judges or the electorate in the election. In the case of a candidate who wishes, for the first time, to become an associate judge the C.B.A.'s "not recommended" finding is tantamount to exclusion from further consideration. Thus, the C.B.A. in this limited situation acts as a *de facto* screening committee for the Circuit Court. The Circuit Court is charged with the responsibility of screening, evaluating and electing new associate judges. Ill.Rev.Stat. ch. 110A, § 39. Thus, in excluding candidates from the ballot, the C.B.A. has undertaken to perform an exclusive public function on behalf of the Circuit Court and is a state actor. It is immaterial whether this practice is by state rule or by custom and practice. Actions by a private party in the absence of a state rule but pursuant to an established custom or accepted practice sanctioned by the state constitute state action. *See Adickes v. Kress Co.,* 398 U.S. at 171, 90 S.Ct. at 1615; *Terry v. Adams,* 345 U.S. 461, 469–470, 73 S.Ct. 809, 813–814, 97 L.Ed. 1152 (1953).

The only authority cited by the C.B.A., *Anderson v. Glismann,* 577 F.Supp. 1506 (D.C.Col.1984), is not persuasive. While the District Court in that case did note that the fact that a private party acts pursuant to a court appointment does not, without more, make such actions attributable to the state, the court held that a court appointed psychiatrist was not a state actor because, although he was acting under the authority of the state, he was not acting on its behalf. We understand this distinction to mean that a person who performs a private function does not become a state actor in doing so under a state's direction. Here, the C.B.A. acted both under authority of the state and on its behalf because it performed the public function of screening applicants for the Judges.

*Liberty Interest*

█ To establish a violation of the due process clause, Plaintiff must demonstrate that she was deprived of a "liberty" or "property" interest. We first examine whether Plaintiff has demonstrated the existence of a liberty interest as that term has been interpreted by the courts. In essence, Plaintiff's claim is based on her allegation that the C.B.A.'s rating of her as "not recommended" deprived her unfairly of her opportunity to obtain employment as a state judge. The "not recommended" rating is alleged to be false in that it was unjustified given her excellent credentials. Plaintiff does not allege that such a "not recommended" rating injured her good name, reputation, honor or integrity. Further, she does not allege that the C.B.A. rating imposed a stigma or other disability upon her that foreclosed her ability to seek other employment opportunities. In fact, it is readily apparent that she could allege neither. The "not recommended" rating is confidential and not disclosed under the C.B.A. rules to other than select members of the C.B.A. itself and to the candidate. Further, the C.B.A. "not recommended" rating arose out of the C.B.A.'s finding that Plaintiff lacked "experience" and "judicial temperament." Neither finding adversely reflects on Plaintiff's ability to perform as a lawyer or in any other business or professional endeavor.

The Supreme Court announced the applicable legal standard to be applied in order to determine whether Plaintiff has stated a cognizable liberty interest in *Board of Regents v. Roth,* 408 U.S. 564, 573–574, 92 S.Ct. 2701, 2707–2708, 33 L.Ed.2d 548 (1972). The Court defined a protectible liberty interest as one that occurs when (1)

charges are made by the government against an individual which might seriously damage his standing and associations in the community, or (2) the state imposes on the individual a stigma or other disability which forecloses his freedom to take advantage of a range of employment opportunities. In *Perry v. Federal Bureau of Investigation, et al.*, 759 F.2d 1271, 1276–1280 (7th Cir.1985), the Seventh Circuit found a protected liberty interest when dissemination of an allegedly false F.B.I. report reflecting on a candidate's honesty and mental stability made it virtually impossible for that candidate to obtain a law enforcement position with federal, state, or local agencies. Thus, the plaintiff was foreclosed from a large group of potential employers. Here, no such result has occurred. The best that can be said for Plaintiff's claim is that a small group of attorneys in the C.B.A. will perceive that she is not qualified by experience or temperament for the position of a state court judge. Plaintiff has no protected liberty interest in obtaining a single position of judge where other opportunities for employment in her field exist. *Cafeteria and Restaurant Workers v. McElroy*, 367 U.S. 886, 895–896, 81 S.Ct. 1743, 1748–1749, 6 L.Ed.2d 1230 (1961). Plaintiff remains free, without stigma, to pursue a career as a public defender, a prosecutor, or to embark on private practice of law. Indeed, she even remains free to pursue a career as a federal judge or magistrate. The limited effect of the C.B.A.'s "not recommended" rating does not rise to the level of a protected liberty interest under the due process clause because it does not significantly injure her professional standing or foreclose her from an array of other employment opportunities as an attorney.

### Property Interest

■ Plaintiff could maintain her action if, under color of state law, she was unconstitutionally deprived of a protectible property interest. Plaintiff agrees in her memorandum in opposition to the motion to dismiss that in order to sustain such a claim she must allege entitlement. As stated by the Supreme Court in *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709,

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must instead have a legitimate claim of entitlement to it.

Plaintiff has no entitlement to the position of Associate Judge of the Circuit Court. No candidate for that office could possibly claim entitlement since it is an elective office. There are no state rules, regulations, or even practices which have been brought to the attention of this court which, in any conceivable way, could entitle an attorney, even a highly experienced one, to such an office. All that Plaintiff alleges, and all that she could allege, is that she meets the minimum objective qualifications. (Complaint, ¶ 14.) *See Jolly v. Listerman*, 672 F.2d 935, 941 (D.C.Cir.1982) ("there is no recognized property right in a mere chance or expectation of being hired ... by a particular employer or to a particular position").

However, Plaintiff argues that her entitlement, although not to the position of judge, is to the right, upon meeting the minimum qualifications, to receive a fair consideration of her application. Plaintiff points to the C.B.A. procedures which permit and perhaps require an investigation and hearing. She argues that under the due process clause such investigation and hearing must comport with fundamental fairness. Plaintiff's argument misses the mark. The Seventh Circuit has repeatedly held that " '[p]rocedural protections or the lack thereof do not determine whether a property right exists.' " *Shango v. Jurich*, 681 F.2d 1091, 1100 (7th Cir.1982) (quoting *Suckle v. Madison General Hospital*, 499 F.2d 1364, 1366 (7th Cir.1974) ). In other words the existence of a state procedural scheme does not by itself create a constitu-

tionally protected property interest. The protectible property interest must be found under state law and must exist independently of and apart from any procedural guarantees. Plaintiff's argument fails because it concedes there is no protected interest in being elected a state judge while claiming a protected property interest in being fairly considered for that position. For these reasons, the court finds that Plaintiff has failed to allege a constitutionally protected property interest.

### Due Process

■ Although not necessary to a determination of this case, the court feels constrained to note that even if Plaintiff had pled the existence of a constitutionally protected liberty or property interest, her complaint fails to establish that either the general procedures or the specific actions of the C.B.A. in reviewing her candidacy denied her due process. The essence of the C.B.A. investigation and hearing is peer review, not an impartial trial by jury. Thus, many of her allegations of unfairness are immaterial. While the C.B.A. procedures call for investigation of the candidate's qualifications, the C.B.A. is not required to conduct an exhaustive investigation of all the candidate's experiences or alleged qualifications. Investigators with both personal and hearsay knowledge of the candidates' qualifications can properly sit on the hearing panel and vote on the candidate. Attorney members of the C.B.A. are not to be disqualified from the panel because they have opposed the candidate in litigation; in fact, in many ways they are the most useful panelists. There need be no requirement that the hearing panel constitute a cross-section of the legal community with full minority representation. All that is required in peer review is that a randomly selected group of the candidate's peers determine qualifications. Much of such a determination is of necessity based on both personal experiences with the candidate and a perception of her repu-

tation in the legal community. Thus, the court believes that the C.B.A. rules and procedures afford judicial candidates a fair peer review and, hence, due process if due process be required.

Plaintiff also complains that the C.B.A. did not follow its own rules in its review of Plaintiff's credentials. Most significantly, Plaintiff charges that the chairman of the hearing committee had been her courtroom adversary and had developed a personal dislike for public defenders in general and the Plaintiff in particular. Under C.B.A. rules, members should disqualify themselves from serving on a hearing panel if they have "personal relationship or a continuing or longstanding professional relationship" with a candidate (C.B.A. Procedures of June 14, 1976. Plaintiff, however, does not allege such a relationship but only that the chairman had been an "actual adversary of Plaintiff." (Complaint, ¶ 20.) Nothing in the C.B.A. procedures would disqualify the chairman under these circumstances. Thus, Plaintiff has not alleged that the C.B.A. violated its own guidelines. In short, the court finds that the C.B.A. review of Plaintiff's application did not deny her procedural due process even if she had a constitutionally protected liberty or property interest.

### Conclusion

For the reasons stated above, the complaint is dismissed under Fed.R.Civ.P. Rule 12(b)(6) for failure to state a claim upon which relief can be granted.