ODAS NICHOLSON, Plaintiff-Appellant, v. CHICAGO BAR ASSOCIATION, Defendant-Appellee.

First District (2nd Division) No. 1—90—2043

Opinion filed August 11, 1992.

William J. Harte, Ltd., of Chicago (William J. Harte and Erik D. Gruber, of counsel), for appellant.

Vedder, Price, Kaufman & Kammholz, of Chicago (Rene A. Torrado, Jr., and Janet M. Hedrick, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

In 1986, plaintiff, Odas Nicholson, a judge of the circuit court of Cook County, sought appointment to a vacancy on the Illinois Appellate Court. As a part of the application process, our State supreme court, the appointing authority, informed her that she should have her qualifications evaluated by the Chicago Bar Association (defendant), and in accordance with defendant's "Resolution Concerning Procedures for Evaluation of Candidates for Judicial Offices" (Resolution), and "Guidelines for Judicial Selection" (Guidelines), plaintiff com-

pleted and submitted to defendant's Judicial Evaluation Committee (JEC) its "Questionnaire for Sitting Judges." On January 21, 1987, the JEC conducted a hearing to review plaintiff's qualifications, and the next day, the JEC notified her that she had been rated "not recommended" for the office.[1] Plaintiff subsequently filed with defendant a petition for rehearing and reevaluation, which was denied. She was not appointed to fill the position.

On March 10, 1988, plaintiff filed a two-count complaint in circuit court against defendant. In count I she claimed that defendant's JEC did not follow its Resolution in conducting her evaluation, and that she was thus denied a fair and impartial investigation and hearing. Specifically she alleged that (1) the JEC "failed to follow [its own] [G]uidelines[2] when it found [her] 'not recommended' "; (2) defendant violated sections 26.7 and 28.1[3] of its Resolution when it failed to communicate to her "a statement of reasons of its finding of 'not recommended' "; (3) defendant violated section 22[4] of its Resolution because it "failed to disclose to [her] in advance of the hearing such information relating to her qualifications which ought to have been disclosed because of their adverse effect"; (4) defendant violated sec-

---

[1]Eventually, plaintiff was informed that her "not recommended" rating was based on a "lack of legal knowledge and ability."

[2]The guidelines address such characteristics as integrity, legal knowledge and ability, judicial temperament, diligence, punctuality, health, age, professional experience, litigation experience, past professional conduct, financial responsibility, political activity, character, patience, common sense, tact, social consciousness, association and public service, and the judicial system.

[3]Section 26.7 provides as follows:

"The presiding officer or a member of the Executive Committee shall prepare the statement of reasons provided for herein, which statement shall be subject to the approval of the presiding officer."

Section 28.1 provides as follows:

"The finding of the Hearing Division panel shall be promptly communicated by the President to the candidate, the Board, the Committee, and to the Court, committee, party, or other entity which submitted the candidate for evaluation or which may be considering the candidate for election, nomination, slating or appointment. In the case of a finding of 'NOT RECOMMENDED,' the communication shall be accompanied by a statement of the reasons for finding."

[4]Section 22 provides as follows:

"If the Executive Committee shall determine that information relating to the qualifications of a candidate has been developed or received which, in fairness, ought to be disclosed to the candidate in advance of the hearing, such information shall be provided the candidate within a reasonable time prior thereto."

tion 27.2[5] of its Resolution when it failed to grant plaintiff a rehearing; and (5) defendant "failed to follow its own rules when it failed to contact any of [the] ten references [she had submitted and that defendant had] failed to seek wide participation [in the selection process] by the legal profession."

In count II, plaintiff alleged that defendant denied her due process of law when it "failed to assure [her] the opportunity to be heard in her defense in an orderly proceeding before the hearing." More specifically, plaintiff alleged that she was denied due process when defendant (1) "failed to institute a proper investigation of [her qualifications] and to contact any of [her] references, thereby making its recommendation arbitrary and without proper support," (2) "failed to present any information to [her] before or after her hearing which adversely affected her qualifications," (3) "failed to provide [her] an opportunity to be heard and to defend any alleged criticism of her qualifications," (4) "finally informed [her] of its reasons for not recommending her which were not factually supported," and (5) "arbitrarily refused to allow [her] petition for rehearing and reevaluation." Plaintiff requested that the court order defendant to "set aside its evaluation of 'not recommended' and to reevaluate plaintiff in a manner consistent with its own rules."

On May 19, 1988, defendant moved, pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), to dismiss plaintiff's complaint. On February 21, 1989, the court dismissed count I of her complaint with leave to amend within 21 days, and reserved ruling with respect to count II. On April 3, 1989, the court dismissed with prejudice count II of plaintiff's complaint. On February 26, 1990, more than 10 months after it was due, plaintiff filed a motion for leave to file an amended complaint, explaining that the late filing was due to the oversight of her attorney. On June 14, 1990, the court

---

[5]Section 27.2 provides as follows:

"In the case only of a 'NOT RECOMMENDED' finding by a panel, a candidate may request a re-evaluation within ten days after being informed of the hearing result. The request must be in writing, must specify the basis for the request and must be directed to the General Chairman at the Chicago Bar Association Offices. *** Such an evaluation shall only be ordered on a determination that the hearing panel's finding is arbitrary or capricious, or to avoid fundamental unfairness. A re-evaluation shall not be ordered solely because the Review Committee disagrees with the hearing panel's findings. *** The decision of the Review Committee regarding whether to re-evaluate the candidate shall be communicated to the candidate as provided elsewhere in this Resolution. *** There is no right to re-evaluation by any candidate who receives a favorable finding ***."

entered a final and appealable order, denying plaintiff's motion as untimely. Plaintiff filed her notice of appeal on July 13, 1990.

## I

Plaintiff contends that even though she was more than 10 months late in presenting it, the trial court abused its discretion in denying her motion for leave to file her amended complaint. She relies on *First National Bank & Trust Co. v. Sousanes* (1978), 66 Ill. App. 3d 394, 396, for the proposition that "the greatest liberality should be applied in allowing amendments with the paramount consideration being whether the amendment furthers the interests of justice." She suggests that either "prejudice [or] surprise to the other party" must be alleged before a court has discretion to dismiss an amended complaint as untimely. She also argues that *Gray v. Starkey* (1976), 41 Ill. App. 3d 555, 559, supports her position, in that there the trial court was found not to have abused its discretion in permitting the plaintiffs "to file an amended complaint 81 days after the expiration of the time previously granted [them] to do so."

Plaintiff further asserts that her case was essentially dismissed for want of prosecution and that, therefore, the dismissal should have been without prejudice. (*Kraus v. Metropolitan Two Illinois Center* (1986), 146 Ill. App. 3d 210.) Finally, as to this issue, she maintains that the June 14, 1990, order denying her leave to file an amended pleading was not final, citing *Gray* (41 Ill. App. 3d at 558), and that therefore the court erred in dismissing her complaint with prejudice.

■ Although the immortal Dante teaches us that the sins of the warm-hearted are to be weighed in different scales than those of the cold-blooded, plaintiff fails to persuade us. The issue of whether a trial court may deny a plaintiff leave to amend her pleadings is one which is properly addressed to the sound discretion of the trial court. (*Sousanes*, 66 Ill. App. 3d at 396.) Accordingly, a reviewing court may intervene only where the trial court acted arbitrarily or, in light of all the circumstances presented, exceeded the bounds of reason and ignored recognized principles of law so that substantial injustice resulted (*In re Marriage of Silber* (1988), 176 Ill. App. 3d 853, 856); or where the judgment of the trial court is found to be palpably erroneous, contrary to the manifest weight of the evidence or manifestly unjust (*In re Marriage of Poston* (1979), 77 Ill. App. 3d 689, 692); or where no reasonable person could take the view adopted by the trial court. *In re Marriage of Petrovich* (1987), 154 Ill. App. 3d 881, 887, *appeal denied* (1987), 116 Ill. 2d 556.

■ Bound, as we are, by the strictures of such a rigid scope of review, we cannot conclude that the trial court here abused its discretion. Section 2—616(a) of our Civil Practice Law (Ill. Rev. Stat. 1991, ch. 110, par. 2—616(a)) provides that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms." Surely, the phrase "just and reasonable terms" must necessarily include the imposition of a time limitation within which the amendment must be filed. To hold on the basis of the record in this case that there was an abuse of discretion would in effect deny the trial court the right to impose what it considers to be "just and reasonable terms." The authority of the trial court to dismiss a plaintiff's action with prejudice because of her failure to abide by its orders is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the circuit court. Moreover, such authority has generally been considered an "inherent power," governed not by rule or statute but by the control necessarily vested in courts to manage their own dockets so as to achieve the orderly and expeditious disposition of cases (see generally *Link v. Wabash R.R. Co.* (1962), 370 U.S. 626, 8 L. Ed. 2d 734, 82 S. Ct. 1386); and, as previously noted, the exercise of such authority will not be set aside except upon a showing of an abuse of discretion. A contrary course would amount to a substitution of the judgment of the reviewing court in place of that of the trial court in which such discretion properly resides.

Nevertheless, assuming, *arguendo*, that the trial judge abused his discretion in denying plaintiff leave to plead over, we hold that her proposed amended complaint does not cure the defects that exist in her original complaint (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 273) and that, moreover, under no set of facts could plaintiff have pleaded a cause of action. (*People ex rel. Council 19 of the American Federation of State, County & Municipal Employees v. Egan* (1977), 52 Ill. App. 3d 1042, 1045; *McErlean v. Union National Bank* (1980), 90 Ill. App. 3d 1141, 1149.) Plaintiff relies on *Perkaus v. Chicago Catholic High School Athletic League* (1986), 140 Ill. App. 3d 127, 133, for the proposition that "the constitution and bylaws of an unincorporated association constitute a contract between the association and its members"; yet there was no contractual relationship at all between defendant, acting as an evaluator, and plaintiff, acting as a candidate seeking the evaluator's recommendation.

She also relies on *Werner v. International Association of Machinists* (1956), 11 Ill. App. 2d 258, 279, for the proposition that "courts will interfere with the decision of an association expelling one of its members if it appears that the rules of the association governing expulsion

have not been observed." Plaintiff does not allege, however, nor can she, that she was expelled from membership in defendant's organization; thus, *Werner* is inapposite. Rather, our courts have held that the judiciary "must refrain from interfering in the affairs of a private association absent a showing of economic necessity." (*Treister v. American Academy of Orthopaedic Surgeons* (1979), 78 Ill. App. 3d 746, 756, *appeal denied* (1980), 79 Ill. 2d 630.) Plaintiff here has not pleaded any facts suggesting economic necessity.

## II

On April 3, 1989, the trial court dismissed count II of plaintiff's complaint, on the ground that "plaintiff has failed to allege sufficient facts to entitle her to the relief she requests." She asserts that the trial court erred in dismissing her claim to due process.

## A

Defendant contends that "when a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved or where the substantial questions involved *** no longer exist, it will dismiss the appeal" (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 622, *cert. denied* (1952), 344 U.S. 824, 97 L. Ed. 624, 73 S. Ct. 24), a situation that exists here, thus mooting plaintiff's case because "no actual controversy exists [since] events occur[ed] which make it impossible for the court to grant effectual relief." (*Wheatley v. Board of Education of Township High School District 205* (1984), 99 Ill. 2d 481, 484-85.) Defendant further argues that the office which plaintiff sought has been filled, and, because more than two years have elapsed since plaintiff's evaluation, she is eligible to be reevaluated by submitting a new questionnaire.[6]

 Contrary to defendant's position, an actual controversy exists on these facts. Although the position which plaintiff sought has been filled, and although it is also true that plaintiff is entitled under one

---

[6]According to section 27.1 of defendant's Resolution:

"There shall be no re-evaluation or re-hearing of any candidate evaluated by the Committee for the same office within two years, except as otherwise provided in this Section. A candidate for an office for which the candidate has been evaluated within a two year period shall be found as previously found without hearing. Each 'two year' period shall commence on the date of the panel hearing finding as to the first candidate of an ascertainable class or group of candidates, e.g., candidates for appointment to fill vacancies in the office of Associate Judge pursuant to published notice of vacancies, candidates for election to the office of Circuit Judge at a general election."

of defendant's internal resolutions to a new hearing, neither of these factors operates to moot her case. Plaintiff's complaint does not seek appointment to the appellate court; rather, she seeks an order setting aside the "not recommended" rating and requiring defendant to re-evaluate her qualifications for the appellate court. The gravamen of the remedy sought here is a withdrawal of the "not recommended" rating; therefore, even though plaintiff is entitled to a new evaluation, it would not supersede the prior finding. Consequently, there still exists an actual controversy which this court might be able to remedy. (*Wheatley*, 99 Ill. 2d at 484-85.) For these reasons, we hold that plaintiff's appeal is not moot.

## B

■ In order to state a cause of action for due process under the fourteenth amendment, defendant's actions must be those of a State actor, and not merely those of a private association. *National Collegiate Athletic Association v. Tarkanian* (1988), 488 U.S. 179, 102 L. Ed. 2d 469, 109 S. Ct. 454.

In this connection the case of *Rouse v. Judges of the Circuit Court* (N.D. Ill. 1985), 609 F. Supp. 243, warrants our consideration. In *Rouse*, the plaintiff, an attorney licensed in Illinois and employed as an assistant Cook County public defender, sought appointment to the position of associate judge of the circuit court. When the plaintiff submitted her name as a candidate to the circuit court, she was referred to the defendant herein for her "initial evaluation." She was afforded a hearing before a panel of the Committee on Evaluation of Candidates, and later received written notice that she was found "not recommended" because of a lack of "judicial temperament [and] professional experience," and was thus excluded from further consideration for the position she was seeking. The plaintiff filed suit in Federal court, claiming that the circuit court of Cook County "ha[d] delegated to the Chicago Bar Association [CBA] the screening and the initial evaluation of potential candidates for judicial office in Cook County," that no candidate would be considered unless she were recommended by the CBA, and that the investigation and subsequent hearing were unfair because the chairman of her hearing panel harbored a bias against her.

After dismissing the defendant's abstention argument, the court addressed the issue of State action, citing *Lugar v. Edmondson Oil Co.* (1982), 457 U.S. 922, 937, 73 L. Ed. 2d 482, 495, 102 S. Ct. 2744, 2753, in which the Supreme Court set forth the circumstances under which private action may be fairly attributable to a State:

> "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. *** Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor."

The *Rouse* court found the first prong of this test to be easily met, since the judges of the circuit court of Cook County collectively determine the method of selecting associate judges.

With respect to the second prong, the *Rouse* court determined that

> "[p]rivate actors who perform exclusive public functions are, for these purposes, state actors. *Terry v. Adams*, 345 U.S. 461, 73 S. Ct. 809, 97 L. Ed. 1152 (1953); *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978). Further, private parties who *de facto* perform governmental functions by controlling public officials or acting as their agents are acting under color of state law. *Dennis v. Sparks*, 449 U.S. 24, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980); *Adickes v. Kress Co.*, 398 U.S. 144, 169-171, 90 S. Ct. 1598, 1614-1616, 26 L. Ed. 2d 142 (1970)." (*Rouse*, 609 F. Supp. at 246.)

The court went on to hold that in situations where the CBA "evaluat[ed] the qualifications of candidates for *new* associate judgeships," it was acting "as a *de facto* screening committee for the Circuit Court," since a "not recommended" finding was "tantamount to exclusion from further consideration." (Emphasis in original.) (*Rouse*, 609 F. Supp. at 247.) Because the circuit court is charged by law with the responsibility of "screening, evaluating and electing new associate judges, *** [by] excluding candidates from the ballot, the C.B.A. has undertaken to perform an exclusive public function on behalf of the Circuit Court and is a state actor." *Rouse*, 609 F. Supp. at 247.

The court distinguished, however, instances where the CBA acted solely as a private association, that is, instances where it

> "evaluates the qualifications of full Circuit Court judges running for reelection *** [or where it] reviews and evaluates sitting associate Circuit Court judges who are seeking retention and transmits its findings to the Judges who subsequently vote on those candidates. *** In those situations the candidates have already been determined and the C.B.A. is simply commenting on their qualifications." *Rouse*, 609 F. Supp. at 246-47.

The analysis in *Rouse* has since been superseded by the Supreme Court case of *National Collegiate Athletic Association v. Tarkanian* (1988), 488 U.S. 179, 102 L. Ed. 2d 469, 109 S. Ct. 454, where the

issue was whether the NCAA's "recommendation" that the University of Nevada, Las Vegas (UNLV) suspend Tarkanian from its athletic program was State action. The Court noted that, in the typical State action case,

> "a private party has taken the decisive step that caused the harm to the plaintiff ***. This may occur if the State created the legal framework governing the conduct [citation]; if it *delegates its authority to the private actor* [citation]; or sometimes if it knowingly accepts the benefits derived from unconstitutional behavior [citation]." (Emphasis added.) (*Tarkanian*, 488 U.S. at 192, 102 L. Ed. 2d at 484-85, 109 S. Ct. at 462.)

Relying, in part, on the fact that UNLV was free to reject the NCAA's "recommendation," and the fact that the State had not conferred any "official authority" on the Association, the Court held that the NCAA was not a State actor.

While it is true on the facts of this case that the supreme court is given the power to fill vacancies occurring in the office of appellate court judge (Ill. Const. 1970, art. VI, §12), plaintiff does not allege, nor is it shown in the record, that those seeking appointment must first seek review by defendant; indeed, in her brief, plaintiff claims that "she is the only sitting judge referred by the Illinois Supreme Court to the defendant for evaluation ***[, and] that since her referral the Illinois Supreme Court has made six appointments to the Appellate Court without referring any of the parties to the defendant." Even if plaintiff were to have alleged that those seeking appointment must first seek review by defendant, nowhere in the record is it shown that the supreme court is not free to accept or reject defendant's recommendations, and appoint whomever it chooses. Plaintiff, herself, makes this concession in paragraph 15 of her amended complaint. Therefore, pursuant to *Tarkanian*, defendant cannot be said to be a State actor.

### C

Even if defendant were a State actor, plaintiff cannot further show a due process violation. "To establish a violation of the due process clause, [p]laintiff must demonstrate[, in addition to State action,] that she was deprived of a 'liberty' or 'property' interest." *Rouse*, 609 F. Supp. at 247; see also *Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701.

1. *Liberty.* Plaintiff essentially contends that the "not recommended" rating was false and unjustified given her excellent credentials. She, like *Rouse*, however, does not allege that the "not recom-

mended" rating injured her good name, reputation, honor or integrity. (*Roth*, 408 U.S. at 573, 33 L. Ed. 2d at 558, 92 S. Ct. at 2707 ("[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential").) Neither does she allege, as in *Rouse*, that defendant's rating "imposed on [her] a stigma or other disability that foreclosed [her] freedom to take advantage of other employment opportunities." (408 U.S. at 573, 33 L. Ed. 2d at 559, 92 S. Ct. at 2707.) Nor has she alleged that defendant's rating has reduced her professional standing or foreclosed her from other employment in her field; indeed, she is still employed as a judge of the circuit court of Cook County and is not precluded from seeking any other position by election or appointment to any judicial office. We therefore hold that

> "[p]laintiff has no protected liberty interest in obtaining a single position of judge where other opportunities for employment in her field exist[, and that t]he limited effect of defendant's 'not recommended' rating does not rise to the level of a protected liberty interest under the due process clause because it does not significantly injure her professional standing or foreclose her from an array of other employment opportunities as an attorney." *Rouse*, 609 F. Supp. at 248.

2. *Property.* "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (*Roth*, 408 U.S. at 577, 33 L. Ed. 2d at 561, 92 S. Ct. at 2709.) Moreover, "[p]roperty interests *** are not created by the Constitution[, but] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." (*Roth*, 408 U.S. at 577, 33 L. Ed. 2d at 561, 92 S. Ct. at 2709.) Plaintiff asserts that she had "a legitimate claim of entitlement to a position on the Appellate Court" insofar as "there were no black women on the Appellate Court [and she] was encouraged to seek appointment to the Appellate Court." Plaintiff does not state, however, the source of this property interest, nor does she allege discrimination because of race.

The *Rouse* court addressed this issue also and found that the plaintiff had no entitlement to the position of associate judge since it was an elected office. "All that plaintiff allege[d], and all that she could [have] allege[d], [was] that she [met] the minimum objective qualifications." (*Rouse*, 609 F. Supp. at 248.) Here, too, plaintiff cannot allege an entitlement to the appointed position. Indeed, plaintiff

can point to no source which has created her alleged property interest; rather, she asserts that because she is minimally qualified for the office, she was entitled to receive fair consideration consistent with due process. The *Rouse* court rejected a similar argument, stating simply that the CBA's promulgation of a procedural scheme "does not by itself create a constitutionally protected property interest." (*Rouse*, 609 F. Supp. at 248-49; see also *Shango v. Jurich* (7th Cir. 1982), 681 F.2d 1091, 1100.) "The protectible property interest must be found under state law and must exist independently of and apart from any procedural guarantees." (*Rouse*, 609 F. Supp. at 249.) Because plaintiff here has identified no independent State law granting her the right to a fair and impartial hearing by defendant, we hold that she has no protected property interest at stake.

For the above-stated reasons, we hold that even if the trial court had abused its discretion in denying plaintiff leave to file her amended complaint as untimely, her proposed amended complaint would not have cured the defects found in her original complaint.

Affirmed.

DiVITO and CERDA, JJ., concur.