Sumanlal **KANERIA**, Plaintiff,

v.

The **AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY, INC.**, Defendant.

No. 92 C 3543.

United States District Court, N.D. Illinois, E.D.

Oct. 5, 1993.

---

Patricia Campbell Bobb, Marina E. Ammendola, Patricia C. Bobb & Associates, P.C., Chicago, IL, Ronald R. Benjamin, Office of Ronald R. Benjamin, Binghamton, NY, for plaintiff.

James W. Rankin, Kurt E. Stitcher, Kirkland & Ellis, Chicago, IL, Peter H. Bouman, Coughlin, Gerhart Law Firm, Binghamton, NY, for defendant.

*MEMORANDUM OPINION*
*AND ORDER*

ASPEN, District Judge:

Plaintiff Sumanlal J. Kaneria brings this suit for breach of contract, negligence, and breach of fiduciary against the American Board of Psychiatry and Neurology, Inc., essentially challenging the Board's repeated decisions to deny him Board certification. Presently before the court is the Board's motion to dismiss the complaint for failure to state a cause of action, pursuant to Fed. R.Civ.P. 12(b)(6). For the reasons set forth below, the Board's motion is granted.

## I. Motion to Dismiss Standard

■ A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir.1988); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.*, 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth* ).

## II. Factual Background

The Board is a private, non-profit corporation whose purpose is to maintain and enhance the quality of psychiatric and neurologic care by identifying qualified specialists within these two fields. In performing this function the Board sets standards of knowledge and skill in these fields and, through a process of separate written and oral examinations, identifies and certifies physicians who meet these standards.

Kaneria is a psychiatrist seeking Board certification so that he might earn a larger salary and receive various additional benefits that are attendant to Board certification. Kaneria's employer, the New York State Office of Mental Health, fixes the salary level of

its psychiatrists based upon Board certification. Kaneria presently earns $89,500 annually as a "Psychiatrist I." If Board certified, Kaneria would be eligible to become a "Psychiatrist II," with an annual salary of $96,500. Additional benefits attendant to Board certification include the opportunity to advance into administrative and/or executive positions, the opportunity to appear as an expert witness in judicial and administrative proceedings, and a generally enhanced recognition in the psychiatric field.

Kaneria initially applied for Board certification in 1977 and first took the written and oral examinations in 1978. After passing the written examination, Kaneria took the oral examination in Denver, Colorado. The oral examination is administered in various cities throughout the United States and consists of two parts: (1) a thirty-minute interview of a patient followed by a thirty-minute interview with the Board's examiners; and (2) an observation of an audiovisual tape of a psychiatric examination that is followed by an interview with the Board's examiners who question the candidate about the content of the tape. After administering the oral examination to Kaneria in Denver, the Board informed him that he had failed.

Thus began an odyssey that took Kaneria to a myriad of cities throughout the United States, including New York, Atlanta, San Diego, San Francisco, Los Angeles, Baltimore, Philadelphia, Chicago, and Seattle in pursuit of a passing grade on the Board's oral examination. Between 1978 and 1990, Kaneria failed a total of ten times, either the first part, the second part, or both parts of the oral examination. The Board informed Kaneria at one point during this period that the passing grade that he received on the written examination would expire after seven years. Kaneria responded by again taking and passing the written examination in 1988.

Upon notification of his most recent failure to pass the oral examination, Kaneria requested information from the Board concerning the reasons for his failing grade. The Board responded by informing Kaneria that he had failed both parts of the oral examination, but the Board did not provide Kaneria with the reasons for his failing grade. Kane-

ria then pursued an appeal of the Board's "negative determination" in accordance with the Board's appeal procedures by paying $400.00 and providing the Board with a written rebuttal to the Board's determination, though he had not been informed of the Board's analysis in deciding to fail him. The Board subsequently advised Kaneria that no personal appearance before the Board was permitted and that the submission of his appeal would be forwarded to the Board's review committee. The Board ultimately sustained Kaneria's failing grade without providing any additional information.

Kaneria alleges that the Board's administration of the oral examination is arbitrary and capricious both as a general procedure by which to measure a candidate's knowledge and skills and as the particular examination was administered to him. In addition, Kaneria alleges that the Board's failure to provide reasons explaining his failing grade and conduct an adequate appeal procedure are arbitrary and capricious. He claims that this arbitrary and capricious conduct caused the Board to: (1) breach the implied covenant of good faith contained within the application for certification agreement; (2) fail to exercise reasonable care in the development and administration of the oral examination; and (3) breach the fiduciary duty that Kaneria claims the Board owes each of its candidates.

### III. Procedural History

Kaneria originally filed his complaint in the United States District Court for the Northern District of New York, asserting federal diversity of jurisdiction. The Board moved for dismissal or transfer on the grounds of lack of personal jurisdiction and improper venue. During the pendency of this motion, Kaneria filed an Amended Complaint. At the hearing on the motion to dismiss, the United States District Judge Thomas J. McAvoy granted Kaneria time to conduct discovery limited to the issues of jurisdiction venue, and thereafter ordered Kaneria to amend his complaint. Kaneria subsequently filed a Second Amended Complaint, and the Board filed a motion to dismiss and for summary judgment on the jurisdiction and venue issues. Following oral argument, Judge McAvoy determined that ven-

ue was improper, and transferred this matter to the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a). The case was then assigned to Judge Brian B. Duff of this District.

The Board once again filed a motion to dismiss, asserting that Kaneria had failed to state a claim upon which relief could be granted. Senior District Judge Milton J. Shadur, sitting in for Judge Duff, granted the Board's motion, but based his ruling solely upon Kaneria's failure to properly allege diversity of citizenship between the parties.[1] Kaneria was subsequently granted leave to file a Third Amended Complaint to rectify the jurisdictional flaw, which he did. The parties, however, agreed to allow the Board's existing motion to dismiss to stand as against the Third Amended Complaint. The entire matter was then reassigned to this court.

## IV. Discussion

■ Although neither party has expressly addressed the issue, we consider as an initial matter the law applicable to this proceeding. When a case is transferred pursuant to 28 U.S.C. § 1406(a) because venue was improper in the transferor court, the law of the state in which the transferee court sits applies in diversity actions. *See Gonzalez v. Volvo of Am. Corp.*, 734 F.2d 1221, 1223 (7th Cir.1984). Accordingly, we shall apply Illinois law in considering this motion to dismiss.

The availability of judicial review to examine a private association's decision to deny an applicant membership in the association, or the benefits thereof, was first considered in Illinois in *Treister v. American Academy of Orthopaedic Surgeons*, 78 Ill.App.3d 746, 33 Ill.Dec. 501, 396 N.E.2d 1225 (1979). The plaintiff, Treister, was an orthopaedic surgeon who was licensed to practice in the State of Illinois. He applied for membership in the American Academy of Orthopaedic

Surgeons, which selected orthopaedic surgeons for membership on the basis of standards and rules adopted by the Academy and published in its bylaws. His application was denied, and he filed suit, claiming that the application procedure was fundamentally unfair because it violated the Academy's own bylaws. In his complaint, Treister alleged that

> active fellowship in the academy is a factor relied upon by hospitals in the granting of orthopaedic surgical privileges, by insurance companies in the establishment of malpractice rates, by courts in determining the expertise of an orthopaedic surgeon whose testimony is offered as expert and by young physicians selecting a clinic in which to practice.

*Treister*, 33 Ill.Dec. at 503, 396 N.E.2d at 1227. He further claimed that membership in the academy was "a practical necessity for an orthopaedic surgeon who wishes to realize maximum potential achievement and recognition in his specialty." *Id.* In his lawsuit, Treister sought a declaration that the rejection of his application was void. He also requested a full explanation of the reasons that his application had been rejected, and an opportunity to be heard at a hearing before an impartial adjudicator.

In considering Treister's claim, the court observed that the propriety of judicial review of a private association's decision to exclude an applicant was a question of first impression in Illinois.[2] The court noted that New Jersey and Arizona courts had previously allowed judicial review of such decisions "when the society controls access to local hospital facilities and thus can deprive the applicant of his ability to practice medicine." *Treister*, 33 Ill.Dec. at 507, 396 N.E.2d at 1231. The court also considered a decision in California, which went further and allowed

---

1. However, Judge Shadur did state that, based upon his review of the substantive law, Kaneria had in fact failed to state a claim upon which relief could be granted. Because of his resolution of the jurisdictional issue, however, Judge Shadur did not formerly reach the issue before us today, and grounded his dismissal solely in Kaneria's failure to adequately allege diversity.

2. The court distinguished the decision of a voluntary association to *expel* an existing member, which has traditionally required some minimum due process. *See Treister*, 33 Ill.Dec. at 507, 396 N.E.2d at 1231. *See also National Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corp.*, 779 F.2d 1281, 1286 (7th Cir.1985); *Virgin v. American College of Surgeons*, 42 Ill. App.2d 352, 192 N.E.2d 414, 423 (1963).

review of an association's application procedure where membership in the association was a "practical necessity ... to realize maximum potential achievement and recognition in [a] specialty." *Treister*, 33 Ill.Dec. at 506, 396 N.E.2d at 1230 (quoting *Pinsker v. Pacific Coast Society of Orthodontists*, 1 Cal.3d 160, 81 Cal.Rptr. 623, 460 P.2d 495 (1969)).

After surveying the legal landscape, the *Treister* court held that judicial review of a private association's application procedure was only available when membership in the organization was an "economic necessity." The court then considered the facts of Treister's case, and concluded:

> We find that the plaintiff has not alleged that membership in the [Academy] is an economic necessity. Membership is not a requisite to hospital staff privileges as evidenced by the fact that the plaintiff is a member of the attending staff at seven Chicago hospitals.
>
> ....
>
> ... We refrain from following *Pinsker* ... because such a holding would result in complaints for judicial review of every application rejection by a voluntary association since membership in most organizations results in some professional or economic benefits.
>
> ....
>
> Although in this case we sympathize with the plaintiff's frustration with the academy's refusal to give him the courtesy of an explanation of the denial of his application, we believe that the courts must refrain from interfering in the affairs of a private association absent a showing of economic necessity.

*Treister*, 33 Ill.Dec. at 508, 396 N.E.2d at 1232 (citations omitted).

The *Treister* court might as well have been referring to Kaneria. Indeed, the allegations in Kaneria's complaint are virtually identical to those in Treister's. Kaneria seeks Board certification in order to receive benefits much like those sought by the plaintiff in *Treister*: additional salary, career advancement, service as an expert witness, and enhanced recognition.[3] He has in no way alleged that Board certification is an "economic necessity," the threshold for judicial review of the application process. On the contrary, Kaneria is presently employed as a psychiatrist, and he has not alleged that his continued employment is threatened by the absence of Board certification. Rather, it appears that the tangible benefits of Board certification, although economically desirable (*e.g.*, a 7.8% increase in salary, performance as an expert witness, etc.), clearly do not rise to the level of "economic necessity." *See Treister*, 33 Ill.Dec. at 508, 396 N.E.2d at 1232 (noting that "membership in most organizations results in some professional or economic benefits"). Without such a showing, this court is precluded from involving itself in the application procedures and membership decisions of the Board.

## V. Conclusion

*Treister* remains good law in Illinois. *See, e.g., Nicholson v. Chicago Bar Ass'n*, 233 Ill.App.3d 1040, 175 Ill.Dec. 118, 599 N.E.2d 1132 *appeal denied*, 147 Ill.2d 629, 180 Ill. Dec. 151, 606 N.E.2d 1228 (1992) (reaffirming *Treister*). Because Kaneria has failed to demonstrate that certification by the American Board of Psychiatry and Neurology is an economic necessity, we must refrain from interfering in the application process.[4] Ac-

---

**3.** We note that *Treister* can not be distinguished on the ground that Treister had already been certified by his respective Board and that he was seeking membership in a separate organization, while Kaneria is merely seeking Board certification. The benefits that Treister sought from membership are virtually identical to those that Kaneria alleges he would obtain if certified. Furthermore, the American Board of Orthopaedic Surgery, the American Board of Psychiatry and Neurology, and the American Academy of Orthopaedic Surgeons are all private associations, and the *Treister* court made no distinction between the benefits of membership in one and the benefits of certification by the other. Rather, review of the application procedures of all of them apparently hinge upon a single element: economic necessity.

**4.** We note that we would reach the same decision even if we were to apply New York law, since New York also requires a demonstration of economic necessity. *See Salter v. New York State Psychological Ass'n*, 14 N.Y.2d 100, 248 N.Y.S.2d 867, 198 N.E.2d 250 (1964).

cordingly, the Board's motion to dismiss the complaint is granted. It is so ordered.